INDEX TO
EVIDENTIARY HEARING TRANSCRIPTS
PETER ROSENWALD
DIRECT EXAMINATION: PAGES 461-485
CROSS-EXAMINATION: PAGES 585-590

**DEVELOPED DEFENSE**

- STARTED EARLY IN THE CASE TO FORMULATE THEORIES OF DEFENSE ................... 484, LINE 11
- DEVELOPED A DEFENSE OF ACCIDENTAL DISCHARGE BASED UPON CONVERSATIONS WITH FEARS ................................................................................ 486, LINE 16
- TO DEVELOP THE DEFENSE, TRIED TO LOCATE SOMEBODY THAT WOULD CORROBORATE ................................................................................................ 486, LINE 20
- PROSECUTION HAD FRANKLIN, FRAZIER AND BRYANT WHO COULD TESTIFY ABOUT ELEMENT OF PRIOR CALCULATION AND DESIGN ........................... 495, LINE 4
- AGREED THAT THOSE 3 WITNESSES ADDITIONALLY PROVIDED EVIDENCE FOR THE FELONY MURDER; WERE EYEWITNESSES TO THE ALLEGED AGGRAVATED BURGLARY AND KIDNAPPING .......................................... 495, LINE 9
- WILL NOT LOOK INTO DEFENSE IF THERE'S NO REASON TO THINK ABOUT IT .................................................................................................................... 499, LINE 7
- "THERE'S ONLY SO MANY FACTS THAT MIGHT BE INVOLVED IN A CASE THAT I CAN WORK WITH. I CAN'T CREATE FACTS." ................................................. 505, LINE 8
- HAD EARLY CONFERENCE IN THE CASE; WITHIN A COUPLE OF DAYS OF INDICTMENT ................................................................................................................ 578, LINE 3
- CONFERENCE WITH HIMSELF, FEARS, AND MR. KELLER .......................................... 578, LINE 14
- MEETING ON APRIL 22, 1997 WITH FEARS ............................................................ 578, LINE 25

**USED ACCIDENTAL DISCHARGE INSTEAD OF VOLUNTARY INTOXICATION**

- NOTES DON'T REFLECT FEARS EVER TOLD HIM HE WAS INTOXICATED OR DRUNK OR HIGH ........................................................................................................ 491, LINE 21
- NOTES DO INDICIATE SUBSTANCE ABUSE ON DAY IN QUESTION .............................. 491, LINE 18
- MAY HAVE CONSIDERED VOLUNTARY INTOXCATION AS DEFENSE, BUT DIDN'T REALLY DEVELOP IT ...................................................................................... 496, LINE 7
- RELIED ON INFORMATION GIVEN BY FEARS TO DETERMINE IF THEY HAD INTOXICATION AS A FACTOR .................................................................................... 505, LINE 19

- ACCIDENTAL DISCHARGE DEFENSE WAS BASED UPON SOMETHING THE PROSECUTION WITNESS, FRANKLIN, SAID AT TRIAL AND WAS SUPPORTED BY FEARS .................................................................................................. 586, LINE 21
- FRAKLIN WOULD CORROBORATE THAT FEARS WAS IN PROCESS OF HANDLING 2 GUNS AND ONE OF THEM WENT OFF ...................................................... 587, LINE 1
- CONSIDERED OTHER DEFENSES BESDIES ACCIDENTAL DISCHARGE ......................... 587, LINE 9
- WOULD HAVE DEVELOPED AN INTOXICATION DEFENSE IF HE FOUND IT AVAILABLE THROUGH HIS INVESTIGATION ........................................................... 589, LINE 2

**DIDN'T PUT FEARS ON THE WITNESS STAND**
- CONSIDERED PUTTING FEARS ON THE WITNESS STAND ......................................... 589, LINE 21
- CONSIDERED WHETHER OR NOT HE WOULD HAVE BEEN A GOOD WITNESS, BUT DECIDED HE WASN'T GOING TO TESTIFY ........................................ 590, LINE 1

**BELIEVES WITNESS IS REFERRING TO JAMES GRANT, NOT FEAR**
- LOOKING AT TRANSCRIPT (PAGE 1470), IT DOESN'T APPEAR WHOEVER IT IS IS TALKING ABOUT ANGELO ................................................................................ 510, LINE 20
- APPEARS THE WITNESS IS TALKING ABOUT JAMES GRANT ..................................... 510, LINE 2
- IN LAKESHA BRYANT'S TESTIMONY REGARDING "HE LOOKED HIGH THE NIGHT HE WAS IN MY ROOM' – REFERRING TO GRANT ............................................ 514, LINE 20
- TESTIMONY BY WITNESS REGARDING GOING OVER TO KENTUCKY…INFORMATION IS NOT TOTALLY RELEVANT AS IT'S RELATED TO ANGELO; MIGHT BE RELEVANT TO CREDIBILITY OF WITNESS ................................................................................................................. 515, LINE 21
- READING FROM DARIUS HARRIS'S DIRECT TESTIMONY – HARRIS DIDN'T KNOW IF ANGELO WAS INTOXICATED ON DAY IN QUESTION .................................. 583, LINE 1
- DOESN'T KNOW IF "THEY" IS REFERRING TO GRANT AND FEARS, OR GRANT AND SOMEONE ELSE .......................................................................................... 583, LINE 16

**EVALUATION OF MITIGATION**
- THOUGHT THERE WAS A PRETTY STRONG PROBABILITY THEY'D GET TO MITIGATION ................................................................................................................ 523, LINE 19
- KNOWING THAT JURIES IN HAMILTON COUNTY ARE CONSERVATIVE ...................... 525, LINE 19

- BY MID-WAY WAS TRYING TO GET MITIGATION BETTER ORGANIZED ....................... 525, LINE 3
- THOUGHT THE LAWYERS PRESENTED THE MITIGATION WELL IN GETTING THE INFORMATION OUT ........................................................................... 526, LINE 13
- THOUGHT THE FAMILY DID WHAT THEY COULD TO TALK ABOUT ANGELO'S HISTORY ........................................................................................... 526, LINE 15
- INFORMATION GIVEN TO HIM LED HIM TO BELIEVE JACOBY WAS CAPABLE OF DOING THE MITIGATION WORK IN THIS CASE ...................................... 549, LINE 21
- THOUGHT JACOBY DID A FAIRLY GOOD JOB IN GETTING INFORMATION FROM ATTORNEYS; COMMUNICATING SHE DID A FAIRLY GOOD JOB ....................... 526, LINE 16
- RECEIVED A LETTER DATED OCTOBER 3, 1997 FROM JACOBY WITH A LIST OF POTENTIAL WITNESSES .................................................................... 539, LINE 19
- FAXED WITNESS LIST TO PANDILIDIS ON OCTOBER 23, DAY AFTER JURY RETURNED ITS VERDICT ............................................................................ 540, LINE 10
- MITIGATION WITNESSES INCLUDED HIS MOTHER, BRIAN ANTEN (LAWYER); ANGELO DEAN FROM HILLCREST SCHOOL; MIXTURE OF FAMILY AND/OR SCHOOL OR JUVENILE HISTORY ..................................................... 542, LINE 1
- DIDN'T CALL ALL THE 31 WITNESSES BECAUSE IT WOULDN'T HAVE BEEN TO FEARS' BENEFIT; WOULD HAVE BEEN REPETITIVE, WHICH MIGHT UPSET JURY ................................................................................................ 542, LINE 20
- TRIED TO GET THE PEOPLE THEY THOUGHT WOULD BE THE BEST ONES TO GIVE THE INFORMATION THEY WANTED TO GIVE ............................................... 543, LINE 4
- GENERALLY, WOULD HAVE KNOWLEDGE OF WHAT WITNESSES WERE GOING TO SAY; A GENERAL OVERVIEW ................................................................. 553, LINE 8
- WAS AWARE OF MRS. FEARS' BURGLARY SITUATION ............................................ 558, LINE 16

**EVALUATION OF PSYCHOLOGIST**
- WASN'T CONCERNED ABOUT SMALLDON'S LACK OF CERTIFICATION; STILL HAD DEGREE AND STILL WAS IN A POSITION TO BE A PSYCHOLOGIST ............................................................................................ 529, LINE 2

**RAISED MOTIONS; OBJECTED/MOVED FOR MISTRIAL**
- RAISED MOTIONS IN FEARS' CASE EVEN THOUGH THE HIGHEST COURT IN OHIO HAS DECIDED THEY'RE NON-MERITORIOUS ............................................. 479, LINE 12

- 4 -

- ATTACKED THE CONSTITUTIONALITY OF THE DEATH PENALTY SCHEME IN OHIO, EVEN THOUGH IT'S BEEN DEEMED BY THE HIGHEST COURT IN OHIO TO BE CONSTITUTIONAL ..................................................................479, LINE 18
- OBJECTED AND MOVED FOR MISTRIAL WHEN PROSECUTOR ASKED, "MR. DEAN, HAS EVERY JUVENILE YOU HAVE DEALT WITH WITH A RECORD LIKE THIS AND A HISTORY LIKE THIS, HAVE THEY ALL GONE ON TO BE MURDERERS?" .................................................................................567, LINE 23
- RAISED THE ISSUE OF THE USE OF A MISDEMEANOR FOR IMPEACHMENT PURPOSES .................................................................................................568, LINE 25