**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| ANGELO FEARS | : | CASE NO: C-1-01-0183 |
| Petitioner | : | Chief Judge Walter H. Rice |
| - vs - | : | Magistrate Judge Michael R. Merz |
| MARGARET BAGLEY, WARDEN | : | |
| Respondent | : | |

___

PETITIONER'S REPLY TO RESPONDENT'S RESPONSE TO PETITIONER'S POST EVIDENTIARY HEARING MEMORANDUM
___

Now comes Petitioner Angelo Fears, and respectfully submits the following

Reply to the Respondent's Response to his Evidentiary Hearing Memorandum.

Respectfully submitted:

s/Lawrence J. Greger (0002592)
Attorney at Law
1100 Liberty Tower
120 W. Second Street
Dayton, Ohio 45402
(937)223-3153
LGreger912@aol.com

TRIAL COUNSEL FOR
PETITIONER

David H. Bodiker (0016590)
Ohio Public Defender

s/Stephen A. Ferrell (0061707)
Assistant State Public Defender
Ohio Public Defender Commission
8 East Long Street—11th floor
Columbus, Ohio 43215
(614) 466-5394
steve.ferrell@opd.state.oh.us

## **MEMORANDUM**

The Warden, in her overview, misses the point. The Court did not afford Petitioner a chance to prove his "alternative theories" of "actual innocence" (Respondent's Response at 2) or "…a chance in an evidentiary hearing to prove his attorneys were buffoons" (Respondent's Response at 3) as asserted by the Warden in her Response, but rather this Court provided the Petitioner the opportunity to demonstrate that his trial counsel rendered him constitutionally ineffective assistance at both the guilt and penalty phases of his capital trial. (See Petitioner's Third and Fifth Causes of Action).

As the sole issue sought to be proven and the sole issue proven at the evidentiary hearing, trial counsel rendered ineffective assistance of counsel in violation of Petitioner's Sixth Amendment right: such was admitted by trial counsel Rosenwald in his deposition that was filed with the court. Prejudice to Petitioner ensued.

## **BRANCH I. THE GUN**

> Trial counsel failed to obtain a firearms expert to rebut the testimony of the State's firearms expert and assist in presenting the defense and their failure to present available evidence that the weapon introduced by the State was the subject of a recall due to the risk of accidental discharge.

2

As set forth in Petitioner's Post-Evidentiary Hearing Memorandum (pgs. 3-4), no investigation of the firearm was undertaken by defense counsel. "…[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances". *Strickland v. Washington,* 466 U.S. 668, 691 (1984). Based on the evidence adduced at the evidentiary hearing, it was unreasonable not to investigate the firearm in question for at least two reasons: 1) The firearm was subject to recall for at least thirteen years prior to the incident that placed Petitioner on death row and 2) The firearm was subject to recall because it was susceptible to accidental discharge if improperly carried with a round in the chamber, and dropped or "otherwise mishandled". No one has been able to define the term "otherwise mishandled" as that term is contained in the recall notice, even to the date of the filing of this Reply.

Contrary to the Warden's assertions that knowledge of the accidental discharge was "published a single time in a single magazine more than a decade before the trial" (Respondent's Response at 16) there are at least two publications, one of which the Prosecutor's office was aware of[1], that published the relevant information. It can hardly be said with a straight face that Petitioner "…meticulously crafted [a] red herring, designed to befuddle the mind and interfere with the step by step progression of logical and orderly thought" (Respondent's Response at 11) when it brought before the court the constitutionally deficient performance of his trial counsel.

The Warden rhetorically asks the court, "Did scientific testing show the pistol went off accidentally?" (Respondent's Response at 13) in defense of the "cheating" she believes Petitioner has asserted. But the Warden fails to realize in phrasing her question,

---

[1] Petitioner's exhibit 8, that was discovered **by Petitioner** for the first time at the evidentiary hearing, although the Respondent possessed a copy of it, was an article in the possession of the Hamilton County Prosecutor's office, sent to the State's firearm's expert, discussing the exact weapon at issue in this case published by the National Rifle Association in their publication *American Rifleman* in 1970.

3

that this is one of the exact points sought to be proven at the evidentiary hearing. The fact that **no** scientific testing was conducted on the weapon, after knowing that the exact gun in question was susceptible to accidental discharge (E.H.R. 207), could not be brought to the jury's attention because defense counsel failed to investigate that fact, failed to discover the recall notice (which inferentially would surely have provided an expert witness from Colt as to why the recall was necessary), failed to discover the *American Rifleman* article, failed to have the gun independently tested, failed to inspect the gun himself and instead relied solely on his knowledge of firearms (E.H.R. 488) to prepare the sole defense developed at trial. (E.H.R. 491, 496).

Contrary to the Warden's statement that the answer to her rhetorical question concerning scientific testing for accidental discharge was "given in a public courtroom, before the judge, the jury and Fears himself, and are now memorialized in a public record called a trial transcript" same is not true for two reasons: 1) The State's expert never tested for accidental discharge after he had knowledge of this weapon's susceptibility for same and thus was never asked by the State, based on the article and his testing, whether in fact this gun could accidentally discharge and 2) No independent expert, with knowledge of the recall and the gun's susceptibility, tested the firearm in question. The decision not to afford themselves the use of an independent expert, although acknowledging they had the opportunity to do so (E.H.R. 482), was an unreasonable and constitutionally defective decision made by trial counsel in light of the surrounding circumstances: buffoonish no, prejudicial yes.

### BRANCH II. THE DRINK

> Trial counsel failed to obtain a toxicological expert to present evidence that Fears was unable to form the requisite intent to kill because he was intoxicated at the time of the killing.

4

The Warden, remaining in her safe haven of facts as set forth in the trial transcript, fears venturing out into the world of facts as they probably would have been, had constitutionally sufficient counsel been provided. The Warden cites to chapter and verse of un-rebutted testimony demonstrating the "lucidity" and "agility" of Petitioner on the night in question. The Warden proves the exact point that absent the development of the intoxication defense which had been successfully used by trial counsel in the past (E.H.R. 588), the State's evidence presented a one-sided scenario. Although counsel cannot say they did not consider the defense (because there was evidence to support it), they can say "we didn't really develop it".

The point is not, like the Warden states, that "Fears claims that he was too intoxicated to shoot a gun" (Respondent's Response at 6) the point is that voluntary intoxication would have been a defense, not to the *actus reus*, (See Branch I) but to the *mens rea* of the aggravated murder. Neither one alone is sufficient for conviction; it is the combination of the two, which constitutes criminal guilt. Counsel excluded this defense unreasonably having failed to conduct an investigation into the facts that would have supported its use.

> Counsel may not exclude certain lines of defense for other than strategic reasons. Limitations of time and money, however, may force early strategic choices, often based solely on conversations with the defendant[2] and a review of the prosecutor's evidence[3]. Those strategic choices about which lines of defense to pursue are owed deference commensurate with the reasonableness of the professional judgments on which they are based. Thus, when counsel's assumptions are reasonable, given the totality of the circumstances, and when counsel's strategy represents a reasonable choice based upon those assumptions, counsel need not investigate lines of defense that he has chosen not to employ at

---

[2] Not true in this case as set forth in Petitioner's Post-Hearing Memorandum at pgs. 8-11.
[3] Again not true in this case since the Prosecutors sent a letter to defense counsel indicating that Fears had made a statement he was "drunk" at the time of the offense (Ex. 28).

5

> trial. Among the factors relevant to deciding whether particular strategic choices are reasonable are the experience of the attorney, the inconsistency of unpursued and pursued lines of defense and the potential for prejudice from taking an unpursued line of defense.

*Strickland v. Washington,* 466 U.S. 668, 681 (1984).

No deference is owed to the decisions of trial counsel in this regard. They considered the defense but failed to develop it when ample evidence of same existed. Their decision was unreasonable and a violation of Petitioner's Sixth Amendment right to effective assistance of counsel.

## BRANCH III. THE SILENCE

Counsel sat by and permitted prosecutorial misconduct to so infect the Petitioner's trial that one Ohio Supreme Court Justice was moved to comment:

> I believe that the type and number of prejudicial errors that occurred throughout the trial cumulatively denied the defendant his due process rights to a fair and impartial trial on the penalty to be assigned.

*State v. Fears,* 86 Ohio St. 3d 329, 355.

Counsel herein failed to "play the role necessary to ensure that the trial is fair". *Strickland v. Washington,* 466 U.S. 668, 685 (1984). The examples of the failures are adequately set forth in both the Amended Petition as well as the Post-Hearing Memorandum. Not only were counsel silent, but so too was the Warden in her failure to address in her Response the constitutionally deficient performance of trial counsel in the face of persistent and prejudicial prosecutorial misconduct. This failure although sufficient for the issuance of the Writ, is independent of the misconduct that cumulatively denied Petitioner his Due Process rights to a fair trial. Both independently support the issuance of the Writ, together they mandate the issuance.

6

## **BRANCH IV. THE MITIGATION**

The Warden, although willing to cite instance after instance of "agility" and "lucidity" in addressing Branch II, states in response to the constitutional failures of trial counsel in mitigation:

> The Warden respectfully submits that if any doubt were present about the effectiveness of counsel during the mitigation phase, Fears has dispelled that doubt through the presentation to this Court of the testimony of his trial counsel Pandilidis and Rosenwald, along with the mitigation investigator [sic] Martha Jacoby. (Respondent's Response at 18).

What doubt was dispelled by:

1) Attorney Rosenwald, who did not know Dr. Smalldon before this case, testifying he would not have used Dr. Smalldon if he had known his track record?

2) The failure to transfer the names of thirty-one potential mitigation witnesses between counsel for twenty days?

3) The first meeting between the mitigation specialist and the attorney who was in charge of the mitigation phase, occurring just before the trial phase began?

4) The meeting length of one hour when a portion of the meeting occurred without the attorney who was taking the lead in mitigation because he showed up late?

5) Only seven of the thirty-one witnesses even being assessed by counsel for use in mitigation?

6) Incriminating facts of the witnesses including alleged mental instability, child neglect, domestic violence and outstanding warrants, brought out by the Prosecutor and unknown to counsel until they heard it in court?

7) What length of time was actually spent by Ms. Jacoby in the development of mitigation versus "personal" or "lost" time?

The Warden's response to this branch is telling, the silence deafening and the argument inadequate to defeat Petitioner's proof that he was provided ineffective assistance of counsel in the preparation and presentation of the mitigation phase of his capital case.

## BRANCH VI. THE EXPERT

Dr. Gastil, a Harvard-educated anthropologist would have provided a theme and organization to the unorganized and thematically-lacking mitigation presentation which actually occurred in Petitioner's trial. "Common layman…would perhaps intuitively have thought of many of the things…he wouldn't analytically and in a kind of organized fashion proceed through the analysis…" (E.H.R. 34). Dr. Gastil would have provided structure to the presentation. (Id.)

Dr. Gastil has trained, written and lectured on violent human behavior as it has been shaped by culture. Dr. Gastil holds the opinion that violent human behavior is shaped and/or determined by the culture in which the violent behavior developed. Dr. Gastil could have removed race before the all-white jury as "the major contribution of anthropology is replacing the assumption that the differences between the behavior of group was due to racial differences [with] the assumption that the differences were due primarily to culture differences." (E.H.R. 27).

Dr. Gastil would have likewise been able to communicate to the Petitioner's jury the cultural situation in which Petitioner was raised, thereby taking the jury out of their culture and inculcating them into Petitioner's. They would have been able to walk a mile in Petitioner's shoes. They would have been able to understand how one learns violence when one's father regularly beats his children, lines them up and shoots them with a bee-bee gun and brandishes handguns before them to control their behavior. From Dr.

8

Gastil's expertise, the jury would have been able to understand the learned behaviors that brought Petitioner to that stage in his life where the alleged crimes actually occurred.

This jury never had the opportunity to fully understand the culture of Angelo Fears, to understand how his value system was developed, how it was short-circuited, with the result being simply a self-replicating act learned in a culture of violence and neglect.

The opportunity was denied by the ineffective assistance of his trial counsel for failing to investigate the use of a cultural anthropologist to explain the culture of violence and the self-replicating acts that were displayed on that Easter Sunday. Counsel's failure to utilize a cultural expert denied the Petitioner his Sixth Amendment right in the mitigation phase of his capital trial.

Petitioner incorporates those portions of his Post-Hearing Brief that are not specifically addressed herein, reasserting those grounds as bases upon which the Writ should issue.

## BRANCH VII. THE CONCLUSION

Contrary to the Warden's assertion that Petitioner attempted to prove his attorneys were buffoons, Petitioner asserts that he has the highest regard for the willingness trial counsel showed in attempting to secure a sentence less than death. Set against the backdrop of Hamilton County, a county that currently has sent a larger proportion of inmates to death row than any other county, with Prosecutors who engaged in repeated and prejudicial misconduct that denied individuals such as Petitioner a fair trial, where counsel are paid what can hardly be called a living wage for their work amounting to some $30.00 per hour, Petitioner thanks his trial counsel for their willingness to subject themselves to these conditions and certainly understands why Attorney Rosenwald has

9

since his case, refused to take any additional capital cases. That being said however, Petitioner's Sixth Amendment rights were violated by their failures, and on balance, his life should not be taken as a result.

          Respectfully submitted:

          s/Lawrence J. Greger (0002592)
          Attorney at Law
          1100 Liberty Tower
          120 W. Second Street
          Dayton, Ohio 45402
          (937) 223-3153
          LGreger912@aol.com

          TRIAL COUNSEL FOR PETITIONER

          David H. Bodiker (0016590)
          Ohio Public Defender

          s/Stephen A. Ferrell (0061707)
          Assistant State Public Defender
          Ohio Public Defender Commission
          8 East Long Street—11th floor
          Columbus, Ohio 43215
          (614) 466-5394
          steve.ferrell@opd.state.oh.us

## CERTIFICATE OF SERVICE

Mr. Maher, Assistant Attorney General was served electronically when this pleading was filed with the court.

          s/Lawrence J. Greger