**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| ANGELO FEARS | : | CASE NO:   C-1-01-183 |
| Petitioner | : | Honorable Judge Walter H. Rice |
| | | Magistrate Judge Michael R. Merz |
| - vs - | : | |
| MARGARET BAGLEY, Warden | : | |
| Respondent | : | |

---

**PETITIONER'S SUPPLEMENTAL POST EVIDENTIARY HEARING MEMORANDUM**

---

Comes now the Petitioner, by and through counsel, and files with this Court his Supplemental Post-Hearing Evidentiary Hearing Memorandum, taking into consideration the newly-decided case of *Hamblin v. Mitchell,* 2003 FED App. 0457P (6th Cir. 2003).

The Sixth Circuit in *Hamblin v. Mitchell,* granted habeas relief to Hamblin on the grounds of ineffective assistance of counsel in the mitigation phase of Petitioner's trial. The Sixth Circuit recognized that "[I]neffective assistance of counsel in capital cases has been a persistent problem in the United States". *Id* at p.2 Petitioner Fears' case continues the persistence of the problem.

As the Sixth Circuit stated, quoting the American Bar Association Guidelines, "Investigations into mitigating evidence should comprise efforts to discover *all reasonably available* mitigating evidence and evidence to rebut any aggravating evidence that may be introduced by the prosecutor". *Id.* As was demonstrated at the evidentiary hearing, Petitioner Fears' constitutional rights to effective assistance of counsel were violated, *Hamblin v. Mitchell* only reinforces that conclusion.

The first meeting with Attorney Pandilidis, the attorney who was charged with coordinating the mitigation phase of the trial, was "just before the trial phase".[1] (E.H.R. 342). Although Martha Jacoby, the mitigation specialist was in Cincinnati on two separate occasions prior to the meeting, she was not asked to meet with counsel to discuss the progress she was making on the mitigation phase of the trial (E.H.R. 348).

As reiterated in *Hamblin* "this investigation should be conducted before the guilt phase of the case. It is said that the 'time consuming task of assembling mitigating witnesses [should not wait] until after the jury's verdict'". *Id.* at 3; *Glenn v. Tate,* 71 F.3d 1204, 1206-1208 (6th Cir. 1995); quoting *Blanco v. Singletary*, 941 F.2d 1477, 1501-1502 (11th Cir. 1991).

The meeting just days before the guilt phase began "was the only meeting prior to the beginning of the mitigation phase". (E.H.R. 352). Jacoby described her frustration as a result of the first meeting:

> I mean there was a lot to talk about here in terms of collecting a whole information package about someone's life and the interviews and the records, so that's really an impossible task when you're breaking it down into some allotted period of time within an hour. (E.H.R. 352).

The Sixth Circuit in *Austin v. Bell*, 126 F.3d 843, 847-48 (6th Cir. 1997) explained that prevailing standards require a full and complete investigation of mitigating evidence.

On October 24, 1997, Jacoby faxed to Attorney Pandilidis a bullet list of her notes based on her contacts with various witnesses. (Ex. 15). Not all witnesses were discussed. (E.H.R. 360). The list was not detailed and did not list the strengths and weaknesses of the various witnesses discussed in the fax. (E.H.R. 360): mitigation began on October 28, 1997 just four days later. On the day before mitigation began, Jacoby "…had some

---

[1] Estimated date of the meeting was October 1, 1997 (E.H.R. 350).

contacts with different people who were going to be testifying, talking with them about that, kind of lining them up, those kind of details". (E.H.R. 356). She did not meet with counsel on that day, although she did have phone contact with Attorney Pandilidis. (Id). The total time of all calls approximated "roughly one hour"; an inadequate time to discuss strategy for what was to start the next day. (E.H.R. 359).

Trial counsel for Petitioner Fears fell below the standards applied in *Glenn v. Tate,* 71 F.3d 1204 (6th Cir. 1995), *Austin v. Bell*, 126 F.3d 843 (6th Cir. 1997) and *Coleman v. Mitchell,* 268 F.3d 417 (6th Cir. 2001), all of which established and applied standards applicable to counsel in a capital case. As the Sixth Circuit stated in *Hamblin*:

> the standards [American Bar Association Standards admitted as exhibit 36 at Petitioner's Evidentiary Hearing] merely represent a codification of longstanding, common-sense principles of representation understood by diligent, competent counsel in death penalty cases…They are the same type of longstanding norms referred to in *Strickland* in 1984 as "prevailing professional norms as guided by American Bar Association standards and the like".

*Id.* at 3.

As the Sixth Circuit reiterated in *Hamblin*, "…counsel must perform a full and complete investigation of mitigating evidence including the defendant's 'history, background and organic brain damage'". *Id.* quoting *Glenn v. Tate*, 71 F.3d 1204, 1206-1208 (6th Cir. 1995). The full and complete investigation of mitigating evidence was not performed in Petitioner Fears' case.

> …one area that was not brought out was that his mother [had] a significant psychiatric history and diagnosis, history of depression, panic disorder, longstanding outpatient treatment, suicidal thoughts. (E.H.R. 364).

Although there was reference in the transcript about Petitioner's mother being overwhelmed and maybe depressed, "that was not developed at all and that is certainly significant in terms of someone's ability to parent". (E.H.R. 364)

> Angelo's substance abuse. There was some reference to maybe him drinking too much or maybe someone said he had a drinking problem. That was not explored in depth at all. Also drug issues weren't explored. (Id.)

*Wiggins v. Smith*, 123 S.Ct. 2527 (2003), now stands for the proposition that the ABA standards for counsel in death penalty cases provide the guiding rules and standards to be used in defining the "prevailing professional norms" in ineffective assistance cases. *Hamblin* at 3. One of the standards is particularly relevant to an aspect of Petitioner Fears' case, to-wit the use of a cultural expert in the mitigation phase of a capital trial.

As ABA guideline 11.8.6 states, among the topics counsel should consider presenting are medical history, educational history, employment and training history, family and social history, prior adult and juvenile correctional experience, and religious and *cultural* influences. The guidelines do not depart from *Strickland* or the trilogy of cases on ineffective assistance of counsel decided by the Sixth Circuit.

Thus, the use of a cultural expert should not be an issue of first impression for this court, as the guidelines which are in accord with *Strickland* and its progeny, specifically mention the development of cultural influences in the development and presentation of mitigation evidence by "diligent, competent counsel in death penalty cases." *Hamblin* at 3.

The presentation of this evidence would have come in the form of Dr. Raymond Gastil a cultural anthropologist. (E.H.R. 55; 41). Dr. Gastil

> …brought the background in thinking about southern violence and homicide in the United States and added to that the particulars of the case and the other hypotheses which have been developed in criminology having to do with differential association and the underclass African American urban environment that a number of people live in.

(E.H.R. 39).

Dr. Gastil, a Harvard-educated anthropologist, had specialized knowledge which would have helped the jury understand the background and some of the causative factors that were involved in the actions that occurred. (E.H.R. 35). Included in his specialized knowledge was his opinion that human behavior is determined by the interaction of four factors: biological, biosocial, cultural and situational. (E.H.R. 28).

Dr. Gastil would have provided a theme and organization to the unorganized and thematically-lacking mitigation presentation which actually occurred in Petitioner's trial. "Common layman…would perhaps intuitively have thought of many of the things…he wouldn't analytically and in a kind of organized fashion proceed through the analysis…" (E.H.R. 34). Dr. Gastil would have provided structure to the presentation. (Id.)

The mitigation would have been organized around the four factors, which shape behavior. Petitioner's background, history and character would have neatly fit into the categories developed by Dr. Gastil and it would have been explained to a very conservative community, by a Harvard-educated anthropologist who has written extensively in the area, including the publication of multiple papers and at least one book.

Dr. Gastil has trained, written and lectured on violent human behavior as it has been shaped by culture. Dr. Gastil holds the opinion that violent human behavior is shaped and/or determined by the culture in which the violent behavior developed. Dr. Gastil could have removed race before the all-white jury as "the major contribution of

anthropology is replacing the assumption that the differences between the behavior of group was due to racial differences [with] the assumption that the differences were due primarily to culture differences." (E.H.R. 27).

Thus based on the standards that set the prevailing norms for diligent, competent capital counsel, the failures of counsel specifically addressed in the Petition, Amended Petition, at the evidentiary hearing, and in post-hearing memorandums, including the failure to develop cultural influences with the availability of Dr. Gastil, unquestionably "there is a reasonable probability that at least one juror would have struck a different balance", thus satisfying the prejudice prong of the *Strickland* standard. *See also Wiggins v. Smith*, 123 S.Ct. 2527, 2543

Respectfully submitted:

s/Lawrence J. Greger
LAWRENCE J. GREGER
Attorney at Law 0002592
Suite 1100 Liberty Tower
120 W. Second Street
Dayton, Ohio 45402
(937) 223-3153
lgreger912@Aol.com

s/Stephen A. Ferrell
STEPHEN A. FERRELL (0061707)
Assistant State Public Defender
Ohio Public Defender Commission
8 East Long Street – 11th Floor
Columbus, Ohio 43215
(614) 466-5394
steve.ferrell@opd.state.oh.us

## **CERTIFICATE OF SERVICE**

    I hereby certify that a copy of the foregoing was electronically served on Mr. Stephen Maher, Assistant United States Attorney.

                                                    s/Lawrence J. Greger_____
                                                   LAWRENCE J. GREGER