IN THE UNITED STATES DISTTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ANGELO FEARS | : | CASE NO: 1:01-CV-183 |
| Petitioner | : | Chief Magistrate Judge Michael R. Merz |
| | | District Judge Walter H. Rice |
| - vs - | : | |
| MARGARET BAGLEY | : | |
| Respondent | : | |

PETITIONER'S REPLY TO RESPONDENT'S RESPONSE
TO PETITIONER'S OBJECTIONS TO INITIAL REPORT
AND RECOMMENDATION

By general order pursuant to Fed. R. Civ. P. 72(b) the District Judges have permitted the Magistrate Judge to reconsider objections to reports on dispositive matters without a separate re-committal order. It is anticipated that the Chief Magistrate Judge will utilize this permission in filing a Supplemental Report and Recommendation, analyzing the Petitioner's objections in relation to the Petition, Evidentiary Hearing, Post-Evidentiary Hearing Brief and all other pleadings filed in the case to the date of his Supplemental Report and Recommendation.

It was and still remains the Petitioner's belief that the Magistrate Judge sought material citations to the record, and a fuller explanation of the factual background upon which Petitioner set his constitutional argument to enable him to fully analyze Petitioner's constitutional claims. Indeed it is believed that the "General Order Regarding Record References" (Doc. 113) was entered because of the lack of specific references to

the record in this case; a deficiency for which apologies were offered in the Petitioner's Objections to the Magistrate's Report and Recommendation. This belief is based in part on the comments of the Chief Magistrate Judge made in his initial Report and Recommendation ("…[F]ears also contends the prosecutor argued in closing that Fears had raised the defense of accident, but provides no record references" (Doc. 114 at p. 23); ("Fears incorrectly attributes all of the comments to Prosecutor Prem's closing argument, providing no trial transcript page reference…" (Doc. 114 at p. 30); (" In addition, Fears repeatedly quotes the Ohio Supreme Court's decision on direct appeal *without any citation of any kind..."* (Emphasis in the original) (Doc. 114 n. 5 at p. 30).

Thus Petitioner in his Objections to the Chief Magistrate Judge's Report and Recommendation, sought to marry the legal argument made throughout his prior pleadings, including the repeated argument that the various state court decisions were an unreasonable application of federal law with specific record references, so that the Chief Magistrate Judge had before him, the specific record references which supported Petitioner's arguments.

There is no question that Petitioner has throughout this case claimed that the various state court decisions were unreasonable applications of clearly established federal law and although lacking specific record references upon which to analyze the Petitioner's claims, the Chief Magistrate Judge had no question that the applicable basis for relief had to be founded on an unreasonable application of clearly established federal law by the various state courts which heard Petitioner's case.[1]

---

[1] "Since Fears filed his petition for a writ of habeas corpus well after the effective date of the Anti-Terrorism and Effective Death Penalty Act of 1996, 110 Stat. 1214 (hereinafter "AEDPA"), the amendments to 28 U.S.C. §2254 embodied in that act are applicable to his petition." (Doc. 114 p. 18); "A state court's decision is contrary to the Supreme Court's clearly established precedent if (1) the state court

2

Thus the Respondent's response that "Fears' failure to evaluate his claims in context of the statutory standard of review, 28 U.S.C. 2254(d), amounts to a failure to carry his burden under AEDPA, and is an independent reason to deny him relief, *Woodford v. Visciotti,* 537 U.S. 19, 25 (2002)." (Doc. 119 p. 1) is not born out by the record. The Respondent's response:

> [A]part from this solitary and perfunctory reference, Fears' fails to allege that any decision of the Ohio courts was an "unreasonable application" of clearly established United States Supreme Court precedent. See 28 U.S.C. 2254(d)(1). Nor does Fears claim that any decision of the Ohio courts was based on an "unreasonable determination" of the facts based upon evidence presented at trial. See 28 USC 2254(d)(2)

ignores this court's order early on in this case that the Respondent file an answer as the Petition passed the initial threshold for habeas relief. (Doc.10). Petitioner has consistently argued that the state court decisions were unreasonable applications of clearly established United States Supreme Court precedent, he only lacked the record citations to prove same; those were provided in the Petitioner's objections to the Chief Magistrate Judge's Report and Recommendation.

The Petitioner, time and again cited to both the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, cited applicable United States precedent in support of his argument that the Ohio state court decisions were unreasonable applications of firmly established Supreme Court precedent and called (finally) to the attention of the Chief Magistrate Judge, the specific record references that detailed the application of those precedents.

---

applies a rule that contradicts the governing laws as set forth in Supreme Court case law, or (2) the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. *Williams v. Taylor,* 529 U.S. 362, 405 (2000). "A state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal rule [from Supreme Court cases] but unreasonably applies it to the facts of the particular state prisoner's case". *Williams* 529 U.S. at 407-408. (Doc. 114 p. 19).

Respondent in her response to Petitioner's Objections states "[S]econd, Fears' claims regarding mislabeling of mitigating factors as aggravating circumstances do not implicate the federal constitution" (Doc. 119 p. 3) and yet on the next page of her Response, the Respondent acknowledges, "[E]ven though individual comments by the prosecutor were "improper", there was no constitutional error when the defendant had a fair trial" (Doc. 119 p. 4) acknowledging that in fact prosecutorial misconduct can affect a Petitioner's Sixth Amendment right to a fair trial. There is no question that intentional prosecutorial misconduct implicates the federal constitution when that misconduct improperly places mitigating evidence on the aggravating side of the equation.

The Sixth Circuit in *Bates v. Bell,* 402 F.3d 635, 641 (6th Cir. 2005) recognized same when analyzing prosecutorial misconduct at the penalty-phase, in stating:

> In the context of a death penalty sentencing hearing…the question of error or effect is more complex than in traditional trials. Rather than determining whether **a constitutional error** would have pushed a jury from a "not guilty" verdict to a "guilty" verdict, we must attempt to discover whether the **constitutional error** influenced the jury's decision between life and death.

The Respondent next argues, "[F]ears, however casts a blind eye to the case as a whole…[B]y obsessing over the trees, and ignoring the broad and deep forest in which those trees exist…" (Doc. 119 p. 4). Petitioner has not only set forth specific instances of prosecutorial misconduct (i.e. the trees), but has claimed, correctly, that the cumulative effect (i.e. the forest) of prosecutorial misconduct denied Petitioner a fair trial. (See Petitioner's First Claim for Relief). Admittedly, the Chief Magistrate Judge was constrained in his analysis ("Fears does not identify which witnesses were asked the allegedly improper questions, nor does he cite to the trial transcript so that the Court could find the offending passages itself. The Court declines to read through nearly four

4

hundred pages of the mitigation transcript to locate the comments of which Fears complains…" (Doc. 114 p. 42). Having now identified both the trees and the forest in which they were intentionally planted by the prosecutors in an obvious attempt to deny Petitioner his right to fair trial, a path has been cleared for habeas relief to be granted.

Respondent cites to Petitioner's offer of "more commentary" (Doc. 119 p. 9, 11) in response to the Chief Magistrate's Report and Recommendation on trial counsel's failure to object to prosecutorial misconduct. Again, it was Petitioner's belief that with additional "commentary" (i.e. citations to the record), coupled with the legal authority set out throughout the petition, traverse, and post-evidentiary hearing briefing habeas relief was warranted and thus focused on the "commentary" that was lacking as noted by the Chief Magistrate in his initial Report and Recommendation. The legal argument has been set forth throughout, the "commentary" is the flesh on the bones of the legal argument. Petitioner did and continued to analyze the "commentary" with reference to the standards set forth in 28 U.S.C. §2254(d) thereby carrying his burden.

Respondent argues in her response that "[T]here is no rule enunciated by the United States Court ascribing constitutional error to instructing the jury about 'accident' where the issue whether a killing was purposeful or accidental was raised by the evidence and argument in the case". (Doc. 119 p. 12). The Prosecutor raised the issue of accident (See Doc. 114 p. 22-23) and sought and received, erroneously, a jury instruction on that issue, which has been criticized by Petitioner (See Petitioner's Ninth Ground for Relief). It is because argument by the Prosecutor and the requested jury instruction by the State raised "accident" that Petitioner has been constitutionally harmed.

For all the foregoing reasons, Petitioner has joined his legal argument with full citation to the record where the constitutionally offensive actions occurred. He has not failed to carry his burden, Petitioner has not failed to "offer even lip service to this mandatory mode of analysis" and has not asked this court to "sort through claim after claim" to "determine which precedent of the United States Supreme Court most closely fits the claim" (Doc. 119 p. 13-14). Petitioner has however, asked this court to "unilaterally decide" (Doc. 119 p. 13) that the state court adjudication is an unreasonable application of clearly established law. Railing against the prosecutors is the seminal duty of defense counsel, which had they performed that function at the trial level, would not have resulted in this habeas petition now being before this court. The devil is in the details. The broad brush used by the Respondent in her response and her failure to address why the specific citations to the record that were called to the attention of the Chief Magistrate Judge in Petitioner's objections ("additional commentary"), are not sufficient to deny Petitioner the relief he seeks.

    Respectfully submitted:

    Lawrence J. Greger
    Attorney at Law 0002592
    Suite 1100 Liberty Tower
    120 W. Second Street
    Dayton, OH 45402
    (937) 223-3153
    lgreger912@aol.com

    David H. Bodiker
    State Public Defender
    Assistant State Public Defender
    8 East Long Street 11th Floor
    Columbus, OH 43215
    (614) 466-5394

                    By: s/Lawrence J. Greger
                    TRIAL COUNSEL FOR
                    PETITIONER

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Reply was served on all attorneys of record by filing same on the Court's CM/ECF system.

                    S/:Lawrence J. Greger