# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

ANGELO FEARS,

                                      :

        Petitioner,                        Case No. 1:01-cv-183

                                    :       District Judge Walter Herbert Rice

     -vs-                                  Chief Magistrate Judge Michael R. Merz

MARGARET BAGLEY, Warden,

                                          :

        Respondent.

---

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

---

On November 8, 2005, the Magistrate Judge filed a Report and Recommendations (Doc. No.
114) recommending that the Petition be denied in its entirety. On March 30, 2006, Petitioner filed
Objections to that Report (Doc. No. 117). The Warden filed a Response on May 24, 2006 (Doc. No.
119) and Petitioner filed a Reply on July 14, 2006 (Doc. No. 123). The Objections are thus ripe for
decision.

The General Order of Reference for the Dayton location of court permits the Magistrate
Judge to reconsider decisions or reports and recommendations when objections are filed, as is done
in the following analysis.

Petitioner presents ten grounds for relief in his Amended Petition, as follows:

### First Ground for Relief

Intentional prosecutorial misconduct in [P]etitioner's state court trial
denied [P]etitioner his right to due process of law and his right to a
fair trial protected by the Sixth Amendment. The resultant sentence
of death violates [P]etitioner's Eighth Amendment right to be free
from cruel and unusual punishment.

A.    Continuous and pervasive misconduct by the prosecution in the guilt phase of capital proceedings which prejudices the Petitioner's right to a fair trial, violates due process and the Eighth Amendment of the United States Constitution.

B.    Egregious misconduct by the prosecutor in the penalty phase of Petitioner's capital proceedings requires reversal of the death sentence where the prosecutor frequently injected improper and prejudicial matter after defense objections had been sustained, argued non-statutory aggravating factors, argued 'facts' [sic] outside the evidence, employed inflammatory remarks and invective against the accused and his counsel. A death sentence based on a jury verdict following such tactics and arguments violates due process and the Eighth Amendment of the United States Constitution.

C.    The Petitioner's case is not one where the misconduct of the Prosecuting Attorneys was slight or confined to a single instance, but one where such misconduct was pronounced and persistent with the probable cumulative effect upon the jury which cannot be disregarded as inconsequential. The cumulative effect of prosecutorial misconduct herein, violates the Petitioner's right to a fair trial under the Fifth, Sixth and Fourteenth Amendments and the resultant sentence of death violates the Eight[h] Amendment.

**Second Ground for Relief**

Petitioner's death sentence resulted from an arbitrary and capricious process that deprived him of fundamental constitutional protections in violation of his rights as guaranteed by the Fifth, Sixth, Eighth, [and] Fourteenth Amendments to the United States Constitution.

A.    It is impermissible for a sentencer in a capital case to weigh the nature and circumstances of the offense as an aggravating circumstance, to weigh as aggravating an aggravating circumstance which the law requires to be merged with another such circumstance for sentencing purposes, and to weigh the mitigating factors separately (rather than collectively) against the aggravating circumstances, and, where the sentencing opinion of the trial court reveals that such errors occurred in the imposition of the death sentence, the death sentence imposed violates the offender's constitutional rights

2

under the Eighth and Fourteenth Amendments to the U[nited] S[tates] Constitution.

B.     Where, as the result of one indivisible course of conduct, a defendant is charged with aggravated robbery, aggravated burglary and kidnapping with separate capital specifications for each of those felonies, in a prosecution for aggravated murder as well as for the underlying felonies, the trial court must merge the kidnapping specification, the aggravated burglary specification, or both, with the other felony specification before the penalty phase.

C.     Unless it can fairly be held beyond a reasonable doubt that penalty phase error in a capital trial had no effect upon the jury's sentencing verdict, appellate courts are rendered powerless by the right to trial by jury and due process from purporting to 'cure' [sic] the error and to affirm the death sentence; any such affirmance violates the right of the accused to trial by jury, and the death sentence must be vacated and set aside.

D.     Where the state fails to establish that aggravation outweighs mitigation beyond a reasonable doubt, the death penal1y [sic] is absolutely precluded, and the imposition of the death sentence under such circumstances constitutes a violation of the offender's constitutional right to be free of cruel and unusual punishment and also his right to due process of law.

**Third Ground for Relief**

Petitioner was denied his right to the effective assistance of counsel during the trial phase of this capital case as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.

A.     Counsel failed to obtain their own firearms expert to rebut testimony from the State's expert as well as to help in presenting their defense.

B.     Counsel failed to present available evidence that the gun introduced by the State at trial was subject to recall due to danger of accidental discharge.

C.     Counsel failed to obtain expert assistance from a toxicologist that [sic] would have presented a defense that Petitioner was unable to form the requisite purpose

to kill because he was too intoxicated at the time of the offense.

D.    Counsel failed to object to numerous instances of prosecutorial misconduct.

**Fourth Ground for Relief**

Petitioner was denied his right to the effective assistance of counsel during the jury selection phase of this capital case as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.

**Fifth Ground for Relief**

Petitioner was denied his right to the effective assistance of counsel at the penalty phase of this capital case as guaranteed by the Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

A.    Failure to adequately prepare and present available mitigating evidence.

B.    Failure to present witnesses who would have corroborated testimony of Petitioner's abusive childhood.

C.    Failure to obtain the assistance of a cultural expert.

D.    Failure to object to prosecutorial misconduct.

E.    Failure to make objections to erroneous jury instructions.

F.    Failure to move to merge specifications.

G.    Cumulative effect of ineffective assistance of counsel.

**Sixth Ground for Relief**

Petitioner Fears was deprived of the effective assistance of counsel on his direct appeal as of right in violation of the Sixth Amendment and [D]ue [P]rocess clause of the Fourteenth Amendment.

**Seventh Ground for Relief**

The most basic notions of due process are violated when a capital defendant is convicted of specifications for which he had not been

4

indicted.

**Eighth Ground for Relief**

The trial court committed constitutional error when it improperly instructed the jurors that they must unanimously recommend a life sentence in violation of Petitioner's Fourteenth Amendment right to be free from deprivation of life without due process of law.

**Ninth Ground for Relief**

A jury instruction on the defense of accident that was neither asserted by the defense nor supported in the record and which has the effect of shifting the burden of proof on the essential element of purpose to Petitioner, violated his fundamental rights to due process and a fair trial as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

**Tenth Ground for Relief**

The execution of a mentally retarded individual constitutes cruel and unusual punishment in violation of [P]etitioner's rights under the Eighth and Fourteenth Amendments.

(Amended Petition, Doc. No. 69.)

## Analysis

### General Objection Concerning State Court Findings of Fact

Although he acknowledges that "[a] factual finding by a state court is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence. 28 U.S. C.§ 2254(e)," Petitioner objects generally (Objections, Doc. No. 117, at 3) to this Court's having accorded a presumption of correctness to findings of fact in this case by the Ohio Supreme Court, particularly the summary of facts stated at the beginning of the Ohio Supreme Court's opinion and quoted in the Report and Recommendations (Doc. No. 114 at 5-6).

Under § 2254(e)(1), a state court's findings of fact are presumed correct and may be rebutted by the petitioner only by clear and convincing evidence to the contrary. *Mitchell v. Mason,* 325 F.3d 732, 737-38 (6th Cir. 2003); *Warren v. Smith,* 161 F.3d 358, 360-61 (6th Cir. 1998). This statutory presumption of correctness extends to factual findings made by state appellate courts on the basis of their review of trial court records. *Brumley v. Wingard,* 269 F.3d 629, 637 (6th Cir. 2001), *citing Sumner v. Mata*, 449 U.S. 539, 546-47 (1981). In *Sumner,* the Supreme Court was expressly faced with fact finding by an appellate court under the prior, less deferential, version of 28 U.S.C. § 2254(d). It held:

> Section 2254 (d) applies to cases in which a state court of competent jurisdiction has made "a determination after a hearing on the merits of a factual issue." It makes no distinction between the factual determinations of a state trial court and those of a state appellate court. Nor does it specify any procedural requirements that must be satisfied for there to be a "hearing on the merits of a factual issue," other than that the habeas applicant and the State or its agent be parties to the state proceeding and that the state-court determination be evidenced by "a written finding, written opinion, or other reliable and adequate written indicia." Section 2254 (d) by its terms thus applies to factual determinations made by state courts, whether the court be a trial court or an appellate court. Cf. *Swenson v. Stidham*, 409 U.S. 224, 230 (1972).

539 U.S. at 546-47.

Petitioner objects further that

> [I]n fact there was no "finding" by the Ohio Supreme Court but simply a summary of the background against which it set its decision. The Ohio Supreme Court does not state the facts as "findings" nor does it use the word "found" in stating its summary.

(Doc. No. 117 at 3). However, nothing in *Sumner* or its progeny requires that, in order to be entitled to the presumption of correctness, a state court's findings of fact must be in any particular form or labeled in any particular way. Petitioner argues further:

> Thus to state that the summary that precedes the Ohio Supreme

Court's decision are facts "found" by a state court that are presumed
correct, does not accurately reflect what the introductory paragraphs
to the Ohio Supreme Court decision actually are and that summary is
due no presumption of correctness.

*Id*. Yet Petitioner cites no Ohio authority suggesting that the factual summaries which are customary introductory paragraphs to Ohio Supreme Court decisions, in capital as well as other cases, and which read as factual summaries (rather than, say, procedural histories or conclusions of law) are intended by the Ohio Supreme Court to be anything other than what they appear on their face to be: summaries of relevant facts, found by the Ohio Supreme Court on the basis of their review of the record.  Objections by Petitioner to specific state court findings of fact will be dealt with as they arise below.

## General Objection on Procedural Default

The Magistrate Judge recommended that some portions of the Petition be denied because the claims had been procedurally defaulted in the state courts.  Petitioner objects generally and at some length to any finding of procedural default in this case (Objections, Doc. No. 117, at 4-9.)

In part, Petitioner objects that because "death is different," "[c]oncerns for comity and for finality do not outweigh the absolute need to protect against the deprivation of an individual's constitutional rights, especially where those deprivations invalidate a capital sentence" *Id*. at 4, *citing Mercer v. Armentrout*, 864 F.2d 1429, 1432 (8th Cir. 1988).  This is simply far too broad a statement.  Much of the modern law of procedural default has been made by the Supreme Court in capital cases and the Sixth Circuit has repeatedly upheld procedural default findings in such cases. That law will be cited below as pertinent to particular objections.

Petitioner also claims generally that "[b]ecause the courts of the State of Ohio have not

consistently and fairly applied the waiver doctrine, Petitioner is entitled to a merits ruling on all grounds for relief contained in his petition." (Objections, Doc. No. 117, at 7-8.)  Significantly, Petitioner cites no case authority for this very broad proposition.  This Court and the Sixth Circuit have routinely applied a much more fine-grained analysis to particular assertions of "the waiver doctrine" than this proposition would allow.

Petitioner is of course correct to insist that procedural default analysis must be cautious and comply with the circuit precedent, particularly as stated in *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986).  Again, the analysis will be applied below to each particular situation where procedural default was found in the original Report and Recommendations and to which specific objection is made.

### General Objection on Procedural Default of Ineffective Assistance of Counsel Claims

Petitioner also generally objects that he "was not required to raise any issue on direct appeal that either directly or indirectly involved the issue of effective assistance of counsel, whether the substantive issue of ineffectiveness of counsel or any other substantive issue that was not properly preserved for appellate review due to the deficient performance of trial counsel." (Objections, Doc. No. 117, at 9-10.)

He begins this objection by citing *State v. Cooperrider*, 4 Ohio St. 3d 226, 448 N.E. 2d 452 (1983), for the proposition that "trial ineffectiveness claims should not be raised on direct appeal." (Doc. No. 117 at 10.)  The stated proposition is nowhere to be found in the *per curiam* opinion in *Cooperrider.*  The controlling Ohio law of criminal *res judicata* is that ineffectiveness claims which can be raised on direct appeal because they can be adjudicated on the basis of the trial record not only should be raised on direct appeal, but are barred from consideration on post-conviction relief

petition if they are not raised on direct appeal.

> 7. Constitutional issues cannot be considered in postconviction proceedings under Section 2953.21 et seq., Revised Code, where they have already been or could have been fully litigated by the prisoner while represented by counsel, either before his judgment of conviction or on direct appeal from that judgment, and thus have been adjudicated against him.

> 9. Under the doctrine of *res judicata*, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was *raised or could have been raised by the defendant at the trial*, which resulted in that judgment of conviction *or on an appeal* from that judgment.

*State v. Perry*, 10 Ohio St. 2d 175, 226 N.E. 2d 104 (1967)(syllabus)(emphasis *sic*.). *See also State v. Cole*, 2 Ohio St. 3d 112, 443 N.E. 2d 169, 170 (1982); *State v. Duling,* 21 Ohio St. 2d 13, 254 N.E. 2d 670 (1970). *Cooperrider*, a *per curiam* opinion, does not cite, discuss, or purport to overrule this body of Ohio law. *Perry* continues to generate progeny long after *Cooperrider*. *See, e.g., State v. Szefcyk,* 77 Ohio St. 3d 93, 671 N.E. 2d 233 (1996); *State v. Lentz,* 70 Ohio St. 3d 527, 649 N.E. 2d 784 (1994).

The *Perry* rule has been repeatedly upheld in the Sixth Circuit as an adequate and independent state rule. *White v. Mitchell*, 431 F.3d 517 (6th Cir. 2005), *citing Monzo v. Edwards*, 281 F.3d 568, 577 (6th Cir. 2002); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Rust v. Zent,* 17 F.3d 155, 160-61 (6th Cir. 1994); *Van Hook v. Anderson*, 127 F. Supp. 2d 899 (S.D. Ohio 2001).

Petitioner also cites *United States v. Hill*, 142 F.3d 305 (6th Cir. 1998) and *United States v. Kincaid*, 145 F. 3d 771 (6th Cir. 1998), for the proposition that "[t]he Sixth Circuit has concluded that the better procedure is for the defendant not to raise the issue of trial ineffectiveness on direct appeal, but to instead raise the issue on collateral review." (Objections, Doc. No. 117, at 10). *Hill* and *Kincaid* are completely inapposite: they § 2255 cases arising entirely within the federal system

and express the preference of the circuit court for how ineffectiveness claims should be litigated in that system. They do not purport to speak to how the state courts handle such claims. As noted above, the same Sixth Circuit has repeatedly held that the *Perry* rule is and adequate and independent state ground of decision which must be respected in cases under 28 U.S.C. § 2254.

Finally in this section, Petitioner asserts that "[w]hen ineffective assistance of counsel so upsets the adversarial process that the verdict is suspect, the grounds contained in the habeas petition must be reviewed regardless of any procedural default that may have occurred," *citing Kimmelman v. Morrison*, 477 U.S. 365 (1986), and *Strickland v. Washington*, 466 U.S. 668, 695 (1984). Petitioner concludes "[t]his court would be justified in exercising its equitable discretion to grant habeas review on any and all of Mr. Fears' claims that this Court determines to be otherwise defaulted." (Objections, Doc. No. 117, at 11, n. 6, *citing Murray v. Carrier*, 477 U.S. 478, 497 (1986)). The cited cases simply do not stand for the propositions for which they are cited. In *Kimmelman*, the Supreme Court found that the petitioner's Sixth Amendment claim had never been defaulted; it did not permit merits consideration of the underlying Fourth Amendment claim which had been procedurally defaulted. See 477 U.S. at 374, n.1. No procedural default issue was present at all in *Strickland.* In *Murray*, the Court held that attorney error rising to the level of ineffective assistance of counsel could constitute cause to excuse a procedural default, but it nowhere held the lower courts have equitable discretion to ignore procedural defaults; instead, it enforced the rule that there must either be cause and prejudice to excuse a procedural default or the petitioner must show actual innocence.

Mis-citation of authority, which occurs throughout Petitioner's general objections, places an unwarranted burden on the Court.

**First Ground for Relief**

10

In his First Ground for Relief, Petitioner complains of a number of instances of asserted intentional prosecutorial misconduct. The original Report and Recommendations concluded that Petitioner had procedurally defaulted some of these sub-claims and that he was not entitled to relief on the merits of the remainder. Petitioner argues the sub-claims separately and they will be treated below in the order in which they are raised in the Objections.

**1.    Improper argument that Derrick Frazier's urination was an aggravating circumstance.**

Derrick Frazier was a victim of the aggravated robbery which led up to Defendant's murder of Antwan Gilliam. At some point during the robbery, Frazier urinated in his pants. The prosecutors argued that the jury could infer Frazier did this because he was terrified at what was happening and his terror was an aggravating circumstance. (See, e.g., Trial Tr. at 2965, quoted at Objections, Doc. No. 117, at 17.) The argument was improper under Ohio law. *State v. Wogenstahl*, 75 Ohio St. 3d 344, 662 N.E. 2d 311 (1996). The Ohio Supreme Court concluded the comment was improper, *State v. Fears*, 86 Ohio St.3d 329, 333, 715 N.E. 2d 136 (1999), and the Magistrate Judge agreed in the original Report and Recommendations. (Report, Doc. No. 114, at 34.)[1]

As noted in the original Report and Recommendations, the next step in the analysis of this claim is to determine whether the improper comment was flagrant by considering (1) the likelihood that the remark would mislead the jury or prejudice the accused, (2) whether the remark was isolated, (3) whether the remark was deliberately or accidentally presented to the jury, and (4) whether other evidence against the defendant was substantial. *See Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000). In the original Report, the Magistrate Judge found the remark was not flagrant

---

[1]This Court is able to reach the merits of this claim because the Ohio Supreme Court misapplied Ohio procedural law in giving the claim only "plain error" review. See Report and Recommendations, Doc. No. 114, at 33.

because the prosecutors acknowledged that the nature and circumstances of the crime can only be considered for mitigation and the trial judge correctly instructed the jury to that effect and on what the proven aggravating circumstances were (Report and Recommendations, Doc. No. 114, at 35-36.) It was then recommended that this sub-claim be denied on the merits. *Id*.

The Objections argue at great length that this misconduct must be flagrant because of how much Ohio precedent it violates (See Objections, Doc. No. 117, at 12-18). The prosecutors' misconduct in this case, considered cumulatively, provoked a spirited dissent in the Ohio Supreme Court from the Chief Justice, with whom Justice Pfeifer concurred. *State v. Fears*, 86 Ohio St. 3d 329, 350-362 (1999). Were the Magistrate Judge a colleague of those distinguished jurists, he would perhaps have been persuaded by their argument. However, this Court does not sit to determine whether the dissenters in the Ohio Supreme Court were more correct than the majority. Instead, we are obliged to decide whether the majority's decision was an objectively unreasonable application of clearly established federal law as announced by the United States Supreme Court. The Ohio Supreme Court majority determined that, in light of the overwhelming evidence of guilt and the fact that the nature and circumstances of the crime – a home invasion robbery of drug dealers – had no mitigating effect, that the remark about Frazier's urination did not affect the outcome. The Magistrate Judge continues to agree and recommend that this sub-claim be denied on the merits.[2]

## 2.     Improper comment on Petitioner's Failure to Testify

Petitioner argues that two comments of the prosecutor in voir dire and one in closing

---

[2]Petitioner places great emphasis on this Court's vacation of the death sentence in *DePew v. Collins*, 1:94-cv-459. There the prosecutorial misconduct was to display a purported picture of Petitioner's uncharged drug dealing in closing argument. That is far more likely to be prejudicial to a murder defendant who was in fact a first offender than the mischaracterization here which, although it plainly violates Ohio law, probably would appear esoteric to the jury.

argument amounts to comment on his failure to testify. The original Report found this claim preserved for merit review, but that the Ohio Supreme Court's disposition of it was not an objectively unreasonable application of federal law. Petitioner's objection (Doc. No. 117 at 19-20) merely reargues the merits and does not cite any Supreme Court law which has been unreasonably applied here.

**3.      Improper reference to Dr. Smalldon as defense counsels' "mouthpiece."**

Petitioner asserts that the prosecutors' improperly referred to Dr. Jeffrey Smalldon as defense counsels' mouthpiece. (Amended Petition, Doc. No. 69 at 15-16.)   In the original Report, the Magistrate Judge concluded this claim was without merit because it didn't happen that way – what the prosecutors did was to call defense counsel Mr. Fears' mouthpiece.

For resolving the issue in this way, Petitioner's present counsel indict the Magistrate Judge for inconsistency (Objections, Doc. No. 117, at 20-21). They say that because the Ohio Supreme Court wrote that the prosecutors referred to Dr. Smalldon as a mouthpiece, that must be what happened, relying on the presumption of correctness for state court fact findings. Petitioner's counsels' report of what the Ohio Supreme Court said is accurate. *See State v. Fears*, 86 Ohio St. 3d 329, 333-334 (1999). But their reliance on the presumption of correctness is misplaced – it is not a conclusive presumption.  The error of the Ohio Supreme Court's finding is conclusively established by the transcript of what actually happened, quoted in the original Report:

> Q:    Okay.  So our Hamilton County Court is paying for you to
>          come in and testify at the request of the defense?
>
> A:    Well, my understanding is that public funds are being used to
>          compensate me for my professional time and expertise in this
>          case.  I'm not sure how else to say that.
>
> Q:    Thank you.  At the request of the Defendant?

A:      Right.  No, at the request of defense counsel.

Q:      Well, as far as we know, they are his mouth piece in this case

        . . . .

(Report and Recommendations, Doc. No. 114, at 39, *quoting* Trial Tr. at 2838.)  28 U.S.C. §

2254(e)(1), which creates the presumption of correctness, also provides it may be overcome by clear

and convincing evidence.  The actual words from the transcript are unambiguous and plainly refute

any claim that a prosecutor called Dr. Smalldon a mouth piece.

Of course, it was also demeaning to refer to defense counsel as a mouth piece, as the

prosecutor did.  An objection was sustained and the jury instructed to disregard the remark.  It is

extremely unlikely that Petitioner suffered any prejudice from this comment, since "mouthpiece"

is a common slang term for criminal lawyers.  See Webster's Third International Dictionary of the

English Language at 1479.

## 4.      Other improper comments[3]

The prosecutors commented several times that Dr. Smalldon, the defense psychologist, had

not written a report on his examination of Petitioner and was unwilling to disclose his notes of his

---

[3]In supporting his Objections at this point (Doc. No. 117 at 24-25), to show that the prosecutor's conduct had an effect on the jury, Petitioner refers to a colloquy among the trial judge and counsel which occurred after they jury had returned a verdict and was excused.  (Jury excused, Tr. Tr. 2996 at l. 17).  Petitioner asserts that this is admissible evidence under Ohio R. Evid. 606(B) of the effect of the misconduct on the jurors because it was not "testimony" and the jurors were not "called" to give it.  It is difficult to understand this argument.  If sworn juror testimony is not admissible to show the effect of something on jurors, why would unsworn and uncross-examined comment be admissible?  Fed. R. Evid. 606(b) expressly prohibits juror testimony about the effect of what happened during trial on his or her mental processes.  The Rule concludes "[n]or may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes."  Thus the referenced colloquy, though presumably accurately transcribed by the court reporter, cannot be admitted in these proceedings to show any impact of prosecutorial misconduct.

14

interviews, a position taken by Petitioner which the trial judge upheld. They also improperly but accurately commented that Dr. Smalldon was being paid with tax dollars. Regarding these comments, the Magistrate Judge wrote "[t]here is some likelihood that the prosecutors' statements could have prejudiced the jurors against the evidence presented through Dr. Smalldon, thereby prejudicing Fears." (Report and Recommendations, Doc. No. 114, at 39). Petitioner objects that no relief was granted, but the Report goes on to conclude that "[t]he aggravating circumstance evidence, however, was particularly strong." *Id.* This is also true and relevant with respect to the other claims of prosecutorial misconduct made in the First Ground for Relief. The prosecutors in this case deserved the criticism they received from the Ohio Supreme Court. But the constitutional standard to be applied to claims of prosecutorial misconduct is whether the conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process, *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Darden v. Wainright,* 477 U.S. 168 (1986); *Kincade v. Sparkman*, 175 F.3d 444 (6th Cir. 1999) or whether it was "so egregious as to render the entire trial fundamentally unfair." *Cook v. Bordenkircher*, 602 F.2d 117 (6th Cir. 1979); *accord Summitt v. Bordenkircher*, 608 F.2d 247 (6th Cir. 1979), *aff'd sub nom*, *Watkins v. Sowders*, 449 U.S. 341 (1981); *Stumbo v. Seabold*, 704 F.2d 910 (6th Cir. 1983). The Ohio Supreme Court's decision is not outside the boundaries set by this case law and therefore not granting relief was not an objectively unreasonable application of federal law.

**Second Ground for Relief**

In his second ground for relief, Fears claims that the sentencer, presumably the trial judge, improperly weighed the nature and circumstances of the offense as an aggravating circumstance, that it was error not to merge duplicative aggravating circumstances, that the aggravating circumstances did not outweigh the mitigating factors in his case, and that the Ohio Supreme Court's reweighing

of the aggravating circumstances and mitigating factors did not cure any of those errors. (Amended Petition, Doc. No. 69 at 26-32.)

Having reviewed Petitioner's Objections as to this ground for relief, the Magistrate Judge does not believe additional analysis would be useful and remains persuaded that the Ohio Supreme Court's disposition of the claims gathered in this ground for relief is not an objectively unreasonable application of clearly established federal law.

**Third Ground for Relief**

In his third ground for relief, Petitioner asserts he received ineffective assistance of counsel at the trial phase in four instances: (1) when trial counsel failed to obtain a defense firearms expert to rebut the state's expert witness' testimony; (2) when they failed to present evidence that the weapon used in the killing was the subject of a recall; (3) when they failed to obtain a toxicological expert to provide assistance respecting Fears' intoxication at the time of the offense; and (4) when they failed to object to numerous instances of prosecutorial misconduct.

**Sub-claim (1): Failure to obtain defense firearms expert**

Applying *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986), the Magistrate Judge found this claim procedurally defaulted (Report and Recommendations, Doc. No. 114, at 56-59). Petitioner objects that the state appeals court holding on this default is not independent of federal law because the court went on to discuss the merits. The relevant discussion in the Court of Appeals relates to Petitioner's second assignment of error in that court, which was that the trial court erred in dismissing his Ohio Revised Code § 2953.21 petition on the basis of *res judicata* without a hearing. *State v. Fears*, 1999 WL 1032592 (Ohio App. 1st Dist. November 12, 1999). The court upheld the dismissal on *res judicata* grounds. It discussed the that doctrine particularly in terms of *State v. Perry*, 10 Ohio St. 2d 175, 226 N.E. 2d 104 (1967), and *State v. Cole*, 2 Ohio St. 3d 112, 443 N.E.

2d 169, 170 (1982). *State v. Fears*, 1999 WL 1032592 (Ohio App. 1ˢᵗ Dist. November 12, 1999). It stated it was upholding the trial court because the evidence submitted in support of this particular claim, namely the Mauer[4] affidavit, "failed to advance the claims beyond speculation and a desire for further discovery." *Id*. at *5. That is an application of the Ohio doctrine of *res judicata*, not a merits analysis. Petitioner claims this analysis is not about procedural default because the Court of Appeals could have stopped with a conclusory "Fears claims were barred by *res judicata*." (Objections, Doc. No. 117, at 42). However, a state court's explanation of its enforcement of a procedural rule does not in any way indicate that "the policies underpinning its procedural rule are unworthy of vindication . . ." *Id*., *quoting Raper v. Mintzes*, 706 F. 2d 161 (6ᵗʰ Cir. 1983).

Petitioner argues the merits of this sub-claim at length in the Objections (Doc. No. 117 at 42-47). The Magistrate Judge believes that competent counsel would have understood how unlikely it would be that a jury would believe an accidental discharge defense in light of the following facts as recited by the Ohio Supreme Court:

> Franklin and Gilliam dropped to the floor. According to Franklin, Grant then told [Fears] who by that time was armed with a gun in each hand, to "shoot one of them niggas." [Fears] pointed the gun at Gilliam, but Grant said, "no, shoot him" referring to one of the other men. [Fears] said, "No, I'm going to shoot him [Gilliam]." [Fears] pointed his gun at Gilliam's buttocks and said "I should shoot you right here in your bootie." Gilliam pleaded with [Fears] not to kill him, but [Fears] told Gilliam, "I don't give a fuck about killing you." [Fears] then fired a single shot into Gilliam's left temple, killing him.

*State v. Fears*, 86 Ohio St.3d 329, 329-30, 715 N.E. 2d 136 (1999).

### Sub-claim (2): Failure to Present Evidence of the Firearm Recall

While Petitioner mentions this claim in his Objections, he makes no specific objection to the

---

[4]The Court of Appeals spells this witness' name "Maurer." The original Affidavit has it as "Mauer." (Appendix, Vox. VI, at 179.

Magistrate Judge's analysis that it was procedurally defaulted.

**Sub-claim (3): Failure to Present a Toxicological Expert on the Intoxication Defense**

For the reasons discussed in the original Report and Recommendations (Doc. No. 114 at 63), the Magistrate Judge is unpersuaded that failure to call a toxicological expert in addition to the evidence presented regarding intoxication would have made a significant difference in the outcome. Thus the First District Court of Appeals' conclusion that this failure did not represent ineffective assistance of counsel is not an unreasonable application of clearly established federal law.

**Sub-claim (4): Failure to Object to Various Instances of Prosecutorial Misconduct**

Having failed to do so in their Post-Evidentiary Hearing Memorandum, Petitioner's counsel now offer four pages (Objections, Doc. No. 117, at 49-52) detailing the instances of prosecutorial misconduct to which they believe trial counsel should have objected. No analysis is offered as to (1) why these examples constitute prosecutorial misconduct; (2) how it constituted a deficiency in performance for trial counsel not to object; (3) how Petitioner was prejudiced by the failure; (4) where these claims were presented to the state courts; (5) whether the state courts disposed of these claims on the merits or found them to be procedurally defaulted; (6) whether, if procedural default was found, it was pursuant to an existing state rule, enforced against Petitioner, adequate and independent, and not excused by cause and prejudice as required by *Maupin v. Smith, supra.* Instead of providing this analysis, the Objections state:

> Counsel apologizes to the court for the failure to specify the instances of prosecutorial misconduct which should have been objected to by defense counsel but now having pointed out extensive instances, prays the Court to re-evaluate its recommendation on Petitioner's sub-claim and grant him relief.

(Doc. No. 117 at 52). To proceed in that manner would be for the Court to speculate what

arguments Petitioner might have made and then adopt them, which seems suspiciously like having the Court become an advocate for Petitioner.   The Magistrate Judge adheres to his prior recommendation on this sub-claim.

**Fourth Ground for Relief**

In his fourth ground for relief, Petitioner argues his trial counsel were ineffective at the jury selection phase of his trial because they did not request a hearing to determine how only one African-American was present in his venire.  (Amended Petition, Doc. No. 69 at 42-43.)

The Objections raise no questions which require analysis beyond that provided in the original Report.

**Fifth Ground for Relief**

In his fifth ground for relief, Fears claims his trial counsel were ineffective in the penalty phase of his trial.  (Amended Petition, Doc. No. 69 at 43-52.)  This ground for relief is presented in six sub-claims.

**1.     Failure to adequately prepare for the penalty phase.**

**2.     Failure to present available mitigating evidence.**

No additional analysis is needed on these two sub-claims beyond what is offered in the original Report.

**3.     Failure to retain a cultural expert**

Despite argument in the Objections about how the guilt phase defense of accidental discharge of the firearm would not have been logically inconsistent with a penalty phase argument about the migration of a Southern culture of violence to northern cities, the Magistrate Judge continues to believe that it would not have been unreasonable for a competent attorney to conclude that those

theories were **rhetorically** inconsistent.  The state courts' conclusion essentially to that effect is not

an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984).

In his Objections at this point (Doc. No. 117 at 75-82), Petitioner argues the asserted

ineffectiveness in failing to call an expert relating to his alcoholism.  That issue is dealt with in the

Third Ground for Relief, *supra.*

**4.     Failure to object to numerous instances of prosecutorial misconduct**

Petitioner's trial counsel did not object to the prosecutor's question to Petitioner's mother

about whether she had a pending charge of burglary.  In the Report, the Magistrate Judge incorrectly

wrote that this would have been admissible under Ohio R. Evid. 609(B).  Petitioner objects that it

was not admissible as a prior conviction because, although Mrs. Fears' had pled guilty, she had not

yet been sentenced.  Although the question was not proper under Rule 609(B), it was proper under

608(B) as prior conduct relevant to the witness' character for truthfulness.  It is difficult to see how

that distinction could have made a difference in the outcome of the trial.

In the original Report, the Magistrate Judge wrote

> Next, Fears claims his counsel were ineffective for not objecting to
> the prosecutor's questioning of various mitigation witnesses as to
> their knowledge of Fears' prior criminal history or membership in a
> gang.  As noted in the Court's consideration of Fears' first ground for
> relief, however, he has not identified the witnesses by name nor has
> he directed the Court to the appropriate pages in the trial transcript.
> Additionally, Fears does not indicate whether his counsel objected to
> the allegedly improper questioning.  Again, the Court declines to sift
> through the record to find support for Fears' claim, and recommends
> denial of the instant sub-claim.

(Report and Recommendations, Doc. No. 114, at 89-90.)  Petitioner's counsel concede the accuracy

of this finding, apologize, and "rectifies [sic] the deficiency as follows. . . ."  There follows a four-

page single-spaced list of allegedly objectionable questions which were not objected to (Objections,

Doc. No. 117, at 86-89), after which counsel apologize again and concludes "[t]here is little question

that Petitioner is entitled to relief on this sub-claim and Petitioner objects to the court's recommendation that relief be denied." *Id*.

Although counsel have now provided a **list** of additional alleged prosecutorial misconduct which they say should have been objected to, they have not provided any additional **analysis** of that misconduct as it allegedly supports issuance of the writ. Why is the conduct by the prosecutor objectionable? The Objections assume without argument that any judge reading them will know what objection should apply and why it would be sustained. Why didn't the defense counsel object? The Objections assume without argument that it was because the attorneys were incompetent, they just missed the objection; no reference is made to the evidentiary hearing testimony to show what they were thinking, although the Court permitted both defense counsel to be called. How did the failure to object prejudice the Petitioner in the sense that the outcome would likely have been different? Again, there is no argument.

In sum, while counsel have now supplied the list of allegedly objectionable questions by the prosecutors which was not briefed prior to the Report, they have not shown how failure to object constituted ineffective assistance of counsel so severe that the state court decision to the contrary is an objectively unreasonable application of clearly established federal law.

### 5.    Failure to object to erroneous jury instructions

The objection to the Report on this sub-claim reads as follows:

> Counsel understands the court's analysis on his sub-claim that trial counsel were ineffective for failing to object to an instruction that the sentencing verdict must be unanimous, however to protect the record, Petitioner objects to the court's denial of relief on this sub-claim.

(Objections, Doc. No. 117, at 90.) A general objection has the same effect as a failure to file altogether. *Howard v. Sec. of HHS,* 932 F.2d 505 (6th Cir. 1991). The reason is that failure to focus

the district court's attention on any specific issues makes the initial reference useless and undermines the purpose of the Magistrate's Act. *Howard*, 932 F.2d at 509. "A district judge should not have to guess what arguments an objecting party depends on when reviewing a magistrate's report." *Howard,* 932 F.2d at 509 (6th Cir. 1991) (quoting *Lockert v. Faulkner*, 843 F.2d 1015, 1019 (7th Cir. 1988) and *citing Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989); *Goney v. Clark*, 749 F.2d 5, 7 (3rd Cir. 1984)).

**6.      Failure to seek merger of duplicative death penalty specifications**

Petitioner's objection on this sub-claim is also general and does not require further analysis.

**Sixth Ground for Relief**

In his sixth ground for relief, Petitioner asserts his appellate counsel provided ineffective representation on direct appeal in the Ohio Supreme Court. (Amended Petition, Doc. No. 69 at 52-56.)

**1.      Failure to assert ineffective assistance of trial counsel in not raising a voluntary intoxication defense**

With respect to several sub-claims, the original Report held that, because they would have had to be supported by evidence outside the record, they could not have been raised on direct appeal (Report and Recommendations, Doc. No. 114, at 91). In the Objections, Petitioner explicitly concedes that additional evidence cannot be added on direct appeal and that claims which depend on matter outside the record must be raised on petition for post-conviction relief (Objections, Doc. No. 117, at 93). Petitioner implicitly concedes that on at least some of these issues, he did have additional evidence which he presented either on post-conviction or during these proceedings.

22

However, he argues there was enough evidence already of record on direct appeal to make it ineffective assistance of appellate counsel to fail to claim ineffectiveness of trial counsel for failing to raise a voluntary intoxication defense (Objection, Doc. No. 117, at 93-94.)

However, the state court of appeals on post-conviction appeal agreed that trial counsels' decision not to present an intoxication defense during the guilt phase was trial strategy, and also noted that "Fears failed to demonstrate that his counsel's [sic] assistance was ineffective or that his defense was prejudiced by the failure to raise a defense of intoxication." *State v. Fears*, 1999 WL 1032592 at *6 (Ohio Ct. App. 1st Dist. Nov. 12, 1999). Given the facts in the record that weigh against Fears' having been totally incapacitated by alcohol (See Report and Recommendations, Doc. No. 114, at 63), a trial counsel decision not to assert the defense is well within the bounds of professional competence. *A fortiori*, it was not ineffective assistance of appellate counsel to fail to claim otherwise. Petitioner offers no evidence that the Ohio Supreme Court would have looked favorably on such an argument.

2.     **Failure to assert ineffective assistance of trial counsel in not objecting to references to the wrong specifications in the jury charge.**

No additional analysis is needed on this sub-claim beyond what is made in the original Report (Report and Recommendations, Doc. No. 93-94).

**Seventh Ground for Relief**

No objections are made to the recommended disposition of this ground for relief.

**Eighth Ground for Relief**

No objections are made to the recommended disposition of this ground for relief.

**Ninth Ground for Relief**

In his ninth ground for relief, Petitioner argues that the trial court erred in giving an unrequested instruction on accident in the guilt phase of his trial. (Amended Petition, Doc. No. 69 at 60.)

The Objections do not demonstrate that the Ohio Supreme Court's resolution of this claim is an objectively unreasonable application of clearly established federal law.

**Tenth Ground for Relief**

As noted in the Report, this ground for relief has been withdrawn.

**Conclusion**

Having considered Petitioner's Objections, the Magistrate Judge again recommends that the Petition for Writ of Habeas Corpus be denied.

October 9, 2006.

s/ Michael R. Merz
Chief United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond

to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

J:\Death Penalty\Fears v. Bagley\Fears Supp R&R.wpd