UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

ANGELO FEARS                              Case No. 1:01-CV-183

     Petititioner,                        Walter H. Rice, Judge

     v.                                  Michael R. Merz, Chief Magistrate Judge

MARGARET BAGLEY, Warden,

     Respondent.

Angelo Fears' Objections to Magistrate Judge's
Supplemental Report and Recommendations

LAWRENCE J. GREGER – 0002592
Attorney at Law
Suite 1100 Liberty Tower
120 W. Second Street
Dayton, OH 45402

and

DAVID BODIKER
Ohio Public Defender

LINDA E. PRUCHA - 0040689
Assistant State Public Defender
Office of the Ohio Public Defender
8 East Long Street
Columbus, Ohio 43215
(614) 466-5394

COUNSEL FOR PETITIONER

**Introduction**

Petitioner Fears addresses below the specific findings of the Magistrate Judge in the Supplemental Report and Recommendations, and also hereby incorporates by reference as if fully set out herein all other arguments contained in his Objections filed on March 30, 2006 (Doc. 117), and Reply filed on July 14, 2006 (Doc. 123).

**Objections to Supplemental Report and Recommendations on First Ground for Relief:**

Intentional prosecutorial misconduct in Petitioner's state court trial denied Petitioner his right to due process of law and his right to a fair trial protected by the Sixth Amendment. The resultant sentence of death violates Petitioner's Eighth Amendment right to be free from cruel and unusual punishment.

A.    Continuous and pervasive misconduct by the prosecution in the guilt phase of capital proceedings which prejudices the Petitioner's right to a fair trial, violates due process and the Eighth Amendment of the United States Constitution.

B.    Egregious misconduct by the prosecutor in the penalty phase of Petitioner's capital proceedings requires reversal of the death sentence where the prosecutor frequently injected improper and prejudicial matter after defense objections had been sustained, argued non-statutory aggravating factors, argued "facts" outside the evidence, employed inflammatory remarks and invective against the accused and his counsel.  A death sentence based on a jury verdict following such tactics and arguments violates due process and the Eighth Amendment of the United Stsates Constitution;

C.    The Petitioner's case is not one where the misconduct of the Prosecuting Attorneys was slight or confined to a single instance, but one where such misconduct was pronounced and persistent with the probable cumulative effect upon the jury which cannot be disregarded as unconsequential.  The cumulative effect of prosecutorial misconduct herein, violates the Petitioner's right to a fair trial under the Fifth, Sixth and Fourteenth Amendments and the resultant sentence of death violates the Eighth Amendment.

In the Supplemental Report and Recommendations (hereafter Supp. R&R), the Magistrate Judge addresses the specific claims of prosecutorial misconduct raised by Petitioner Fears.  The Magistrate examined the improper remark by the prosecutor about Derrick Frazier's

urination, concludes that the argument was improper under Ohio law, as did the Ohio Supreme Court, and then proceeds to the analysis provided by <u>Boyle v. Million</u>, 201 F.3d 711, 717 (6th Cir. 2000). The Magistrate notes, "[i]n the original Report, the Magistrate Judge found the remark was not flagrant because the prosecutors acknowledged that the nature and circumstances of the crime can only be considered for mitigation and the trial judge correctly instructed the jury to that effect and on what the proven aggravating circumstances were…" (Supp. R&R p. 12). However, this analysis fails to put the remark in the context of the repeated misconduct engaged in by the prosecutor. Similarly, the Magistrate finds additional misconduct to be either not improper or not prejudicial, as in the prosecutor's comment on Petitioner's failure to testify, the use of the term "mouthpiece" in the cross-examination of Dr. Smalldon (as the Magistrate notes, the majority in the Ohio Supreme Court interpreted this as a remark by the prosecutor that Dr. Smalldon was defense counsel's mouthpiece; the dissenters in the Ohio Supreme Court correctly addressed the remark as a comment that defense counsel were the "mouthpiece" of their client). The Magistrate dismisses the term as slang for criminal lawyers. (Supp. R&R, pp. 13-14).

While the Magistrate acknowledges that the comments by the prosecutor about Dr. Smalldon's failure to submit a written report, unwillingness to disclose his notes, that he was being paid with tax dollars, and other instances of prosecutorial misconduct had some liklihood to prejudice jurors, the Magistrate concludes that the aggravating circumstance evidence was strong. The Magistrate Judge again concluded that the Ohio Supreme Court decision on Fears' prosecutorial misconduct claim was not an objectively unreasonable application of federal law. (Supp. R&R, p. 15).

To succeed on a claim of prosecutor misconduct, Fears must meet one of two standards. He must demonstrate either that the prosecutor's misconduct prejudiced a substantive right, <u>see</u>

Donnelly v. DeChristoforo, 416 U.S. 637, 644 (1974) (citing Griffin v. California, 380 U.S. 609 (1965)) (footnote omitted); United States v. Carter, 236 F.3d 777, 785 (6th Cir. 2001), or that the prosecutor's misconduct rendered the trial fundamentally unfair.  See Berger v. United States, 295 U.S. 78 (1935); Gravley v. Mills, 87 F.3d 779, 786 (6th Cir. 1996).

The Sixth Circuit Court of Appeals has analyzed a due process claim of misconduct under a two-part test.  First, it determines if the prosecutor's acts "were improper."  Washington v. Hofbauer, 228 F.3d. 689, 698-99 (6th Cir. 2000) (citation omitted).  Second, it looks at "four factors" to "determine if the comments were sufficiently flagrant to warrant reversal . . .."  Id. (citation omitted).  Those four factors are: 1) whether the remarks likely would mislead the jury or prejudice the accused; 2) whether the remarks were isolated or extensive; 3) whether the remarks were made deliberately or accidentally; and 4) the strength of the evidence against the accused.  Id. (citations omitted).

The reviewing court should not give the last factor, the strength of the evidence, inordinate weight.  In Boyle v. Million, 201 F.3d at 717-18, the court reversed a habeas petitioner's conviction based on a finding of prosecutorial misconduct even though the evidence of guilt was quite strong.  See also Carter, 236 F.3d at 791 (granting habeas relief on grounds of prosecutorial misconduct despite sufficiency of evidence).  Moreover, the strength of the evidence at the trial phase is irrelevant to claims of misconduct occurring at the mitigation phase. Bates v. Bell, 402 F.3d 635, 641 (6th Cir. 2005).  This is so because the mitigation phase involves an assessment of the defendant's moral guilt and not his legal guilt.  State v. Holloway, 527 N.E.2d 831, 840 (Ohio 1988) (Douglas, J., concurring); California v. Brown, 479 U.S. 538, 545 (1987) (O'Connor, J., concurring).

The prosecutors' actions in this case must be examined in totality, which reveals a pattern of deliberate, flagrant misconduct.    The prosecutor argued nonstatutory aggravating circumstances, argued that the nature and circumstances of the aggravated murder were aggravating circumstances, commented upon Fears failure to testify and to present evidence in his defense, misstated the law, denigrated defense counsel and the defense penalty phase expert witness, and alluded to facts not in evidence or inadmissible.    The prosecutorial misconduct in this case was designed to inflame the passions of the jury, to induce the jury to render a decision based on considerations other than proper law and evidence, and to tip the scale in favor of death.    For example, the prosecutor argued that Derrick Frazier's terror was an "aggravating circumstance," told the jury that it should weigh Fears' childhood abuse against the nature and circumstances of the offense, implied that mitigation must outweigh aggravation, and made improper comments about Dr. Smalldon which implied that he was guilty of wrongdoing and withholding pertinent information, and that he was being paid with taxpayer money.    All of these comments were found to be improper by the Ohio Supreme Court, and the court acknowledged that the prosecutor's aim in at least some of the comments was to "gain an unfair advantage." Ohio v. Fears, 715 N.E. 2d 136, 143-46 (1999).    Other questions and comments were improperly made by the prosecutors about Fears' lack of remorse, his failure to kill other people at the scene, his knowledge of right from wrong, membership in gangs and participation in an assault.    Id.

The prosecutors repeatedly attacked the credibility of Dr. Smalldon, in spite of admonishment by the trial court.    The repeated attempts to imply that Dr. Smalldon was hiding information, was not being truthful, and was somehow a waste of taxpayers' money demonstrate the prosecutors flagrant and deliberate disregard for due process.    Gall v. Parker, 231 F.3d 265 (6th Cir. 2000), is instructive.    In Gall, rather than attack the evidence of extreme emotional

distress, the prosecution attacked the existence of the defense itself. The prosecutor's attack on Dr. Smalldon was an effort to improperly diminish substantial mitigating evidence presented by the defense. Rather than directly attack the factual basis of Dr. Smalldon's testimony with a rebuttal witness of its own, the prosecution took the improper route of a "know-nothing appeal[ ] to ignorance." Gall, 231 F.3d at 314. Such conduct was inappropriate under our judicial system, which requires the prosecutor respond "through arguments rooted in evidence and testimony rather than words and tactics designed to inflame passions, air unsubstantiated prosecutorial belief, and downplay the legitimacy of a legally recognized defense." Id. at 316.

The prosecution attacked defense counsel by referring to them as the "mouthpiece" of Fears. This was not an isolated remark, because the prosecutors also referred to defense counsel as magicians attempting to trick the jurors by deliberately lying. TR 2339-40. The prosecution may not make "unfounded and inflammatory attacks on the opposing advocate." United States v. Young, 470 U.S. 1, 9-10 (1985). See also Carter, 236 F.3d at 785 (citation omitted); State v. Liberatore, 433 N.E.2d 561, 566-67 (Ohio 1982); State v. Smith, 470 N.E.2d 883, 885 (Ohio 1984) (finding prosecutorial argument, including references to the defense as lies, a smoke screen, a well conceived and well rehearsed lie, and that intimated counsel suborned perjury prejudicially impacted the defendant's substantial rights). These attacks were direct, and inappropriate criticisms of defense counsel for doing their jobs. Bates, 402 F.3d at 647. The prosecutor's actions were calculated to mislead by influencing the jury's opinion on the credibility of Fears, Dr. Smalldon, and defense counsel. See Carter, 236 F.3d at 786. The prosecutor's argument likely caused the jury to question Fears' entire defense, during both phases.

Moreover, the prosecutor's argument and questions, by commenting on Fears failure to testify and present evidence, implied that Fears needed to prove that he was innocent. TR 959, 960, 2294. This line of argument was improper. The defense has no burden of proof at trial. See In re Winship, 397 U.S. 358, 365 (1970). The defendant has no obligation to produce witnesses and the prosecution may not comment on this matter in a manner that suggests that the defendant had an obligation to produce evidence of his innocence. United States v. Clark, 982 F.2d 965, 968-69 (6th Cir. 1993) (citation omitted) ("it would be improper for the prosecutor to suggest that the defendant had the burden of proof or any obligation to produce evidence to prove his innocence.") Such conduct was particularly damaging because jurors believe the prosecutor will observe his obligation to seek justice. Berger, 295 U.S. at 88. Therefore, "improper suggestions, insinuations, and especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none." Id.

The prosecutor made repeated and blatant appeals to emotion. Moreover, his actions misled the jury on the law. Caldwell v. Mississippi, 472 U.S. 320, 336 (1985). Ohio law is clear on several points that the prosecutor simply ignored. The nature and circumstances of an offense are mitigating factors, not aggravating circumstances. See O.R.C. § 2929.04(B); State v. Stumpf, 512 N.E.2d 598, 604 (Ohio 1987); State v. Wogenstahl, 662 N.E.2d 311, 319 (Ohio 1996). Further, the murder itself was not an aggravating circumstance. State v. Gumm, 653 N.E.2d 253, 264 (Ohio 1995); State v. Jenkins, 473 N.E.2d 264, 302 (Ohio 1984). Despite the clarity of Ohio law, the prosecutor repeatedly and deliberately invoked nonstatutory aggravating circumstances for the jury's consideration. These statements were designed to mislead the jury into believing it could weigh and consider factors precluded by law. The prosecutor's argument improperly misstated the law and misled the jury. McCoy v. Court of Appeals of Wisconsin,

486 U.S. 429, 436 (1988) ("Neither paid nor appointed counsel may deliberately mislead the court with respect to either the facts or the law").  Given the compelling mitigation evidence available, the prosecution's argument prejudicially impacted Fears' case at sentencing.

In its review of this claim, The Ohio Supreme Court noted particular instances of misconduct, finding some to be improper, and finding others to be explainable by some precipitating action of defense counsel.  But the court failed to consider the cumulative effect of the comments, and failed to acknowledge that they were pervasive, flagrant, and deliberate.  Indeed, the court noted the prosecutors' propensity to "make outlandish remarks, misstate evidence, [and] confuse legal concepts", yet still failed to grant relief.  Ohio v. Fears, 715 N.E. 2d 136, 143 (1999).

While the trial court did sustain some of counsels' objections, and instruct the jury to disregard certain acts of misconduct, the misconduct was so pervasive that the instructions did little to thwart the prejudicial effects of the prosecutor's actions.  Smith, 470 N.E.2d at 885-86.  See also Berger, 295 U.S. at 85.  Fears' capital trial was plagued with prosecutorial misconduct of the worst sort.

In spite of objections by defense counsel, the prosecutors continued to offer improper questioning, comments, and arguments.  Such misconduct is flagrant.  Additionally, the remarks were not isolated.  Rather, the misconduct was extensive, encompassing both phases of Fears' trial.  Even where the trial court sustained objections, the prosecutor returned again and again to impermissible conduct.  The misconduct of the prosecutors was also deliberate.  This Court is "not confronted with an off-hand remark in a heated trial."   Bates, 402 F.3d at 648.  Deliberateness is easily illustrated by the extent of the misconduct and the prosecution's defiance of trial court rulings.  Id.

Even were this Court to find evidence of guilt overwhelming, such a finding would be irrelevant at the penalty phase. Bates, 402 F.3d at 641. Rather, "prosecutorial misconduct in the sentencing hearing can operate to preclude the jury's proper consideration of mitigation." Id. At the penalty phase, Fears presented a compelling mitigating case. Fears presented testimony from several family members who detailed his abusive and neglected upbringing. A psychologist also testified that Fears has a low I.Q. of between seventy-five and eighty, is alcohol-dependent, and suffers from a personality disorder. Family members and relatives testified that he grew up in a poor, violent, and drug-ridden environment. They testified that his father abused him and his siblings by throwing them against a wall, beating them with his fists or a belt, shooting them with a BB gun, and waking them up for beatings. Due to his parents' work schedule, Fears received little attention from his parents and was left to care for himself, with some supervision by his older sister. He began regularly using alcohol by age twelve. His siblings described him as a follower, easily manipulated. Dr. Smalldon testified that Fears had a low IQ of eighty, near the borderline range of mild mental retardation, and he has a personality disorder with antisocial and narcissistic features. Fears, 715 N.E. 2d at 154. TR 2537-2796.

Death was not a foregone conclusion in Fears' case. See Strickland v. Washington, 466 U.S. 668, 719 (1984) (Marshall, J., dissenting). A solitary juror relying on a lone mitigating factor could reject the death penalty in this case. State v. Brooks, 661 N.E.2d 1030, 1042 (Ohio 1996), Mills v. Maryland, 486 U.S. 367, 381 (1988). This precarious balance was tipped in favor of death by prosecutor misconduct. Stringer v. Black, 503 U.S. 222, 232 (1992). In light of these facts the misconduct "cannot be said to have been meaningless in the jury's consideration of mitigation." Bates, 402 F.3d at 649.

Fears has established both that the prosecutor's actions were improper and that the prosecutor committed flagrant acts of misconduct. The many acts of misconduct, during both phases of Fears' capital trial, "had substantial and injurious effect or influence in determining the jury's verdict[s]." See id. (citing Brecht v. Abrahamson, 507 U.S. 619, 638 (1993)). Relief from Fears' conviction and sentence are warranted.

The Ohio Supreme Court reviewed Fears claims of prosecutorial misconduct, which were raised in his first and twenty-first propositions of law. Although the court concluded that there was no reversible error, the court expressed "deep concern over some of the remarks and misstatements made by the prosecutors involved in this case." State v. Fears, 86 Ohio St. 3d 329, 332, 715 N.E. 2d 136, 143 (1999).

The majority opinion looked at each error separately, rather than cumulatively. However errors must be considered for their cumulative effect. This includes errors to which defense counsel did not object. Berger v. United States, 295 U.S. at 85. The mere sustaining of objections may not be sufficient to cure such pervasive misconduct. Id. at 85.

The Ohio Supreme Court's analysis of Fears' prosecutorial misconduct claims was contrary to, or an unreasonable application of, clearly established Federal law. See 28 U.S.C. § 2254(d)(1). First and foremost, the Court's manner of addressing Fears' claims of misconduct was unreasonable. Clearly established Federal law dictates that claims of prosecutorial misconduct are considered for their cumulative effect on the defendant's trial. See Darden, 477 U.S. at 181. See also Berger, 295 U.S. at 89 ("we have not here a case where the misconduct of the prosecuting attorney was slight or confined to a single instance, but one where such misconduct was pronounced and persistent with a probable cumulative effect upon the jury which cannot be disregarded as inconsequential."); Francis, 170 F.3d at 556 (holding cumulation

of prosecutorial misconduct warranted new trial). Even the Ohio Supreme Court has recognized the necessity of considering the cumulative effect of prosecutorial misconduct. <u>Fears</u>, 715 N.E.2d at 158 (Moyer, C.J., dissenting) (citing <u>Keenan</u>, 613 N.E.2d at 209-10; <u>Liberatore</u>, 433 N.E.2d at 566-67).

Each individual act of misconduct, or type of misconduct, is not separated out for consideration. Under such circumstances, it would be nearly impossible to succeed on a claim of misconduct. Rather, the alleged misconduct in its entirety should be reviewed to determine whether it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." <u>See</u> <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986) (citing <u>Donnelly</u>, 416 U.S. 637) (internal quotations omitted); <u>See also</u> <u>United States v. Francis</u>, 170 F.3d 546, 556 (6th Cir. 1999). Nevertheless, the Ohio Supreme Court considered each separate act of misconduct, and failed to consider the cumulative effect.

Under the proper analysis, the totality of these circumstances, the prosecutor misconduct at Fears' trial rendered those proceedings unfair and denied him due process. <u>See</u> <u>DePew v. Anderson</u>, 311 F.3d 742, 751 (6th Cir. 2002) ("Cumulatively, it is clear that these errors are not harmless."); <u>Bates</u>, 402 F.3d at 648. From start to finish, the prosecution committed repeated acts of misconduct. Fears' trial was plagued with acts of misconduct bringing to the jury's attention irrelevant and inflammatory information that prejudiced its decisions on both guilt and sentence. The prosecutorial misconduct robbed Fears of his rights to a fair trial and a reliable sentence. <u>See</u> <u>id.</u>

Additionally, the court's finding that the trial court, by sustaining certain objections, alleviated the impact of prosecutorial misconduct is contrary to, or involved an unreasonable application of clearly established Federal law. As the Supreme Court recognized in <u>Berger</u>,

11

sometimes the misconduct is simply too much for the trial court's instructions to cure. 295 U.S. at 85. See also Boyle, 201 F.3d at 717-18. Even when the trial court sustained counsels' objections, the prosecution returned to prohibited areas time and again, for example the repeated references to Dr. Smalldon's failure to provide a report or his notes. Like Berger, the misconduct "was pronounced and persistent with a probable cumulative effect upon the jury which cannot be disregarded as inconsequential." Id. at 81. Even sufficient evidence of guilt cannot save a conviction tainted by misconduct. Boyle, 201 F.3d at 717-18.

Thus, the Ohio Supreme Court's conclusion that these acts of misconduct did not render the trial unfair or create prejudicial error is contrary to or involved an unreasonable application of clearly established Federal law. See 28 U.S.C. § 2254(d)(1). The prosecutor raised irrelevant and inflammatory factors. The prosecutor misled the jury on the law. The carry-over effect of the prosecutor's trial phase misconduct meant that the jurors continued to be affected by the prosecutor's improper trial tactics in the penalty phase. State v. Thompson, 514 N.E.2d 407, 421 (Ohio 1970). The additional misconduct in the penalty phase rendered Fears' death sentence unreliable. The prosecutorial misconduct in Fears' case warrants a reversal of his conviction and sentence.

Fears also incorporates by reference as if fully set out herein his original objections to the Magistrate's Report and Recommendations on the First Ground for Relief. (Doc. 117 and 123).

**Objections to Supplemental Report and Recommendations on Second Ground for Relief :**

Petitioner's death sentence resulted from an arbitrary and capricious process that deprived him of fundamental constitutional protections in violation of his rights as guaranteed by the fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

A.    It is impermissible for a sentencer in a capital case to weigh the nature and circumstances of the offense as an aggravating circumstance, to weigh as aggravating an aggravating circumstance which the law requires to be merged

with another such circumstance for sentencing purposes, and to weigh the mitigating factors separately (rather than collectively) against the aggravating circumstances, and, where the sentencing opinion of the trial court reveals that such errors occurred in the imposition of the death sentence, the death sentence imposed violates the offender's constitutional rights under the Eighth and Fourteenth Amemdments of the U.S. Constitution.

B.    Where, as the result of one indivisible course of conduct, a defendant is charged with aggravated robbery, aggravated burglary and kidnapping, with separate capital specifications for each of those felonies, in a prosecution for aggravated murder as well as for the underlying felonies, the trial court must merge the kidnapping specification, the aggravated burglary specification, or both, with the other felony specification before the penalty phase.

C.    Unless it can fairly be held beyond a reasonable doubt that penalty phase error in a capital trial had no effect upon the jury's sentencing verdict, appellate courts are rendered powerless by the right to trial by jury and due process from purporting to "cure" the error and to affirm the death sentence; any such affirmance violates the right of the accused to trial by jury, and the death sentence must be vacated and set aside.

D.    Where the state fails to establish that aggravation outweighs mitigation beyond a reasonable doubt, the death penalty is absolutely precluded, and the imposition of the death sentence under such circumstances constitutes a violation of the offender's constitutional right to be free of cruel and unusual punishment and also his right to due process of law.

The Magistrate Judge concluded that additional analysis was unnecessary for this ground for relief.  (Supp. R&R, p. 16).  Fears hereby incorporates by reference as if fully set out herein his original objections to the Magistrate's Report and Recommendations on the Second Ground for Relief.  (Doc. 117 and 123).

**Objections to Supplemental Report and Recommendations on Third Ground for Relief:**

Petitioner was denied his right to the effective assistance of counsel during the trial phase of this capital case as guaranteed by the Sixth and Fourteenth Amendments to the United States Consitution.

A.    Counsel failed to obtain their own firearms expert to rebut testimony from the State's expert as well as to help in presenting their defense.

B.    Counsel failed to present available evidence that the gun introduced by the State at trial was subject to recall due to danger of accidental discharge.

C.    Counsel failed to obtain expert assistance from a toxicologist that would have presented a defense that Petitioner was unable to form the requisite purpose to kill because he was too intoxicated at the time of the offense.

D.    Counsel failed to object to numerous instances of prosecutorial misconduct.

The Magistrate Judge concludes that the failure to obtain a firearms expert was procedurally defaulted; that with regard to the firearm recall evidence, Fears makes no specific objection to the conclusion that it is procedurally defaulted; and that a toxicology expert would not have made a difference to his case. Thus, the Magistrate concludes that the Court of Appeals conclusion that this was not ineffective assistance is not unreasonable. As to the prosecutorial misconduct claim, the Magistrate concludes that the Objections offer no analysis of the merits or procedural posture. (Supp. R&R, pp. 16-19)

The State's witness, William Schrand, testified as a firearms examiner. The defense cross-examined Schrand, but did not call a rebuttal defense expert in firearms. As a result, the jury did not hear expert testimony which would have supported the unintentional shooting theory, either by gun malfunction, or human mistake. Yet the defense theory was that the shooting was unintentional. This theory was not excluded by eyewitness testimony. TR 1540-1700, 1969-2037, 2097-2198. Steve Franklin testified that as soon as Fears cocked the gun, it went off. TR 2016, 2018. During post-conviction proceedings, Cleon Mauer, firearms expert, examined the gun (PC Exh. 35, 35A, 36, 37). He noted that Schrand's testimony lacked necessary information regarding the condition and firing capability of the gun. Mauer also stated in his affidavit that the gun was subject to a recall as to a susceptibility to unintentional discharge. (PC Exh. 36, 38, 39)

14

Fears also asserts that the failure to obtain a toxicologist deprived him of effective assistance of counsel. Fears had consumed marijuana, beer and liquor for most of the day and evening preceding the offense. (PC Exh. 26, 29, 41, 42). Dr. Robert Smith examined Fears during state post-conviction proceedings and concluded that at the time of the offense he was impaired in several respects. (PC Exh. 42).

Defense counsel has a duty to hold the state to the burden of proving every element of each offense. Counsel's ineffective assistance deprived Fears of an adversarial proceeding.

Ohio Rev. Code Ann. § 2929.024 provides a statutory right to expert assistance for indigent defendants charged with capital offenses. The Sixth Amendment assures the criminal defendant the right to compulsory process, which includes the "right to present the defendant's version of the facts." Washington v. Texas, 388 U.S. 14, 19 (1967). A defendant is entitled to a "fair and adequate opportunity" to defend against expert testimony under the Fourteenth Amendment due process and equal protection clauses. Chambers v. Mississippi, 410 U.S. 284, 294 (1973); Ross v. Moffitt, 417 U.S. 600, 616 (1974).

Fears was entitled to the assistance of experts. When the state brings criminal charges against an indigent defendant, it must take steps to insure that the accused has a meaningful chance to present his defense. See Douglas v. California, 372 U.S. 353 (1963); Griffin v. Illinois, 351 U.S. 12 (1956). Although the state is not required to provide all the resources that money can buy, it must provide the defendant with the "basic tools of an adequate defense." Britt v. North Carolina, 404 U.S. 226, 227 (1971). See also Ake v. Oklahoma, 470 U.S. 68, 77, 83 (1985); Ross v. Moffitt, 417 U.S. 600, 612 (1974) (state cannot deny indigent defendants "an adequate opportunity to present their claims fairly within the adversary system.")

"Most courts that have considered the application of <u>Ake</u> have held that where an indigent defendant established a substantial need for an expert, without which the fundamental fairness of his trial will be called into question, <u>Ake</u> requires the appointment of an expert regardless of his field of expertise." <u>Rey v. State</u>, 897 S.W.2d 333, 338 (1995)  The Sixth Circuit has stated that "[c]riminal trials are fundamentally unfair if a state proceeds against an indigent defendant without making certain that he has access to the raw materials integral to building a defense." <u>Terry v. Rees</u>, 985 F.2d 283, 284 (6th Cir. 1993), citing <u>Ake v. Oklahoma</u>, 470 U.S. at 77.  In the Terry case, the court found that the denial of an independent pathologist at the time of trial was an error which deprived the defendant of the opportunity to present an effective defense.  <u>Terry v. Rees</u>, 985 F.2d at 284.  The court found the error harmless only because the independent pathologist appointed at the direction of the district court during habeas proceedings agreed with the conclusions of the prosecution's expert.  <u>Id</u>. at 285.

An expert can help in two ways.  "He can gather facts, inspect tangible evidence, or conduct tests or examinations that may aid defense counsel in confronting the prosecution's case, including its expert witnesses….Second, the expert can provide opinion testimony to rebut prosecution evidence or to establish an affirmative defense…" <u>Moore v. Kemp</u>, 809 F.2d 702, 709 (11th Cir. 1987).  Once a defendant has established that something (such as the cause of death) is going to be "a significant factor at trial, [the defendant] was entitled to more than an expert to testify on his behalf—he was also entitled to 'technical assistance…to help evaluate the strength of [that] defense,…and to identify the weaknesses in the State's case, if any, by…preparing counsel to cross-examine opposing experts." <u>Rey v. State</u>, 897 S.W.2d at 343, quoting <u>De Freece v. Texas</u>, 848 S.W.2d 150, 158-59 (Tex. Crim. App. 1993)(emphasis added)

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686 (1984). In Fears' case, counsel failed to challenge the State's case at crucial points.

In order to establish prejudice, Fears "need not show that counsel's deficient conduct more likely than not altered the outcome in the case." Strickland v. Washington, 466 U.S. at 693. He must show that there is a reasonable probability that, but for counsel's errors, the factfinder would have had a reasonable doubt about his guilt. Id. at 695. If counsel's performance had not been deficient in this case, the jurors would have had a reasonable doubt as to Fears' intent.

The trial court erred when it dismissed the claims relating to the firearm without an evidentiary hearing. The Court of Appeals affirmed the trial court's denial of the petition without an evidentiary hearing. This decision should not stand because Petitioner had a statutory right to a hearing on all the issues in his petition based on the sufficiency of his supporting evidence and facts adduced in the discovery process. See Ohio Rev. Code Ann. § 2953.21(C) and (E). The Court of Appeals conclusion that the trial court did not err in finding the claims to be barred by res judicata was objectively unreasonable. Petitioner's claim was supported by evidence dehors the record sufficient to mandate an evidentiary hearing. State v. Jackson, 413 N.E.2d 819 (1980); State v. Kapper, 448 N.E.2d 823 (1983). The evidence presented in support of the claim was not internally inconsistent. State v. Calhoun, 714 N.E.2d 905 (1999). The evidence dehors the record was not specious, but instead presented sufficient operative facts to support the claims. State v. Cole, 443 N.E.2d 169, 171 (1982). Petitioner should have received an evidentiary hearing in state court on this claim.

As to counsel's failure to obtain a toxocologist, the Magistrate relies upon the analysis in the original Report and Recommendations. Fears hereby incorporates by reference as if fully set out herein his original objections to the Magistrate's Report and Recommendations on the Second Ground for Relief. (Doc. 117 and 123).

As to the instances of prosecutorial misconduct outlined by Petitioner in his original Objections, they illustrate the prosecutors' attempts to argue and allude to facts that were inadmissible, not in evidence, or unproven. The prosecutors attempted to discredit Fears by introducing additional statements about his supposed criminal history. The prosecutor used this tactic to attempt to discredit other witnesses as well. The prosecutor also improperly denigrated mitigating evidence by implying that the mitigation specialist, because she works for defense counsel, would merely tell witnesses what to say, and that Fears should get the death penalty because he never paid taxes and is on welfare.

The death penalty differs in kind from all other forms of punishment. See Woodson v. North Carolina, 428 U.S. 280, 304-05 (1976). It must, therefore, be imposed in a manner that is as reliable as is humanly possible. See id. An arbitrarily imposed death sentence is not reliable. See, generally Furman v. Georgia, 408 U.S. 238 (1972). The means by which arbitrariness in capital sentencing proceedings is eliminated is through the enactment and strict enforcement of a valid capital sentencing scheme, devised by the legislature. See, generally, Gregg v. Georgia, 428 U.S. 153 (1976); Jurek v. Texas, 428 U.S. 262 (1976).

O.R.C. § 2929.04(A)(1)-(9) sets out the aggravating circumstances that may be weighed against a defendant's mitigating factors at the penalty phase of a capital trial. These are the only selection factors that may be placed on "death's side of the scale." See Stringer v. Black, 503 U.S. 222, 232 (1992). See also State v. Wogenstahl, 75 Ohio St. 3d 344, 355, 662 N.E.2d 311,

321 (1996). Moreover, constitutional error results when invalid aggravators are placed into the capital sentencing calculus. See Stringer, 503 U.S. at 235-36; Sochor v. Florida, 504 U.S. 527, 539 (1992); State v. Davis, 38 Ohio St. 3d 361, 369-70, 528 N.E.2d 925, 933-34 (1988). Concomitantly, O.R.C. § 2929.04(B) sets out the mitigating factors to be considered in sentencing. A jury may not be precluded from considering relevant mitigating factors. Lockett v. Ohio, 438 U.S. 584 (1978).

The prosecutor's misconduct was a deliberate and repeated attempt to lead the jurors into improper considerations, thereby creating the danger that Fears was sentenced to death based on arbitrary and non-statutory considerations.

Counsel's failure to object rendered deficient performance, to Fears' prejudice. "One of defense counsel's most important roles is to ensure that the prosecutor does not transgress [the bounds of proper conduct]." Washington v. Hofbauer, 228 F.3d 689, 709 (6th Cir. 2000). Failure to object, unless it is plain error, may result in an error being waived for appellate review. See Lucas v. O'Dea, 179 F.3d 412, 418-19 (6th Cir. 1998); Gravley v. Mills, 87 F.3d 779, 785 (6th Cir. 1996); Freeman v. Lane, 962 F.2d 1252, 1256-59 (7th Cir. 1992). Counsels' failure to object ensured that the impact of the prosecutor's prejudicial acts were felt full-force. Trial counsel's errors and omissions, and their cumulative effect, denied Fears his right to counsel. Strickland, 466 U.S. 668; Harris v. Wood, 64 F.3d 1432 (9th Cir. 1995).

The Ohio Supreme Court summarily rejected these claims without any citation to, or discussion of, federal law. Fears, 715 N.E.2d at 153. Thus, there was no adjudication on the merits of this claim by the Ohio Supreme Court that requires any deference by this Court on habeas review. See Doan v. Brigano, 237 F.3d 722, 730-31 (6th Cir. 2001); Magana v. Hofbauer, 263 F.3d 542, 551 (6th Cir. 2001) (de novo review of habeas claim alleging

ineffective assistance of counsel). <u>See</u> <u>also</u> 28 U.S.C. § 2254(d)(1). Resultantly, under <u>Harris v.</u> <u>Stovall</u>, 212 F.3d 940 (6th Cir. 2000), this Court must conduct "an  independent review of the record and applicable law to determine whether the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented." <u>Id.</u> at 943 (citation omitted).

Fears also incorporates by reference as if fully set out herein his original objections to the Magistrate's Report and Recommendations on the Third Ground for Relief. (Doc. 117 and 123).

**<u>Objections to Supplemental Report and Recommendations on Fourth Ground for Relief</u>:**

Petitioner was denied his right to the effective assistance of counsel during the jury selection phase of this capital case as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.

The Magistrate concluded that additional analysis was unnecessary for this ground for relief. (Supp. R&R, p. 16). Fears hereby incorporates by reference as if fully set out herein his original objections to the Magistrate's Report and Recommendations on the Fourth Ground for Relief. (Doc. 117 and 123).

**<u>Objections to Supplemental Report and Recommendations on Fifth Ground for Relief</u>:**

Petitioner was denied his right to the effective assistance of counsel at the penalty phase of this capital case as guaranteed by the Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

A.     Counsel failed to adequately prepare for the presentation and defense of the evidence gathered for the penalty phase.

B.     Counsel failed to present available mitigating evidence that would have presented a complete picture of Petitioner's character and background for the jury.

C.     Counsel failed to obtain expert cultural assistance to investigate and present mitigating evidence.

D.     Counsel failed to object to numerous instances of prosecutorial misconduct.

E.     Counsel failed to object to erroneous jury instructions.

F.    Counsel failed to move for the merger of duplicative death penalty specifications.

As to Subclaims A and B, the Magistrate concluded that no additional analysis is needed. (Supp. R&R p. 19).

As to counsel's failure to obtain a cultural expert, the Magistrate believes that the accidental discharge theory and the theory of migration of a Southern culture of violence to northern cities are rhetorically inconsistent.  (Supp. R&R, p. 19-20).

However, once the trial reached the penalty phase, the jurors had already found Fears guilty of aggravated murder, which necessarily meant a finding of specific intent.  They therefore had rejected the accidental theory of the defense.  It would be unreasonable to abandon compelling mitigating evidence in favor of reliance on a theory which the jury had already rejected.  See, Wade v. Calderon, 29 F.3d 1312, 1325 (9th Cir. 1994) (presentation at penalty phase focused exclusively on multiple personality, despite existence of other compelling mitigation, and despite fact that jury had already twice rejected the multiple personality defense.) In fact, testimony about the cultural context of violence was consistent with other testimony about Fears' disadvantaged background.

The United States Supreme Court reiterated the importance of a complete investigation of mitigating evidence in Wiggins v. Smith, 539 U.S. 510, ____, 123 S. Ct. 2527, 2537 (2003) (the ABA Guidelines provide that investigations into mitigating evidence "should comprise efforts to discover *all reasonably available* mitigating evidence and evidence to rebut any aggravating evidence that may be introduced by the prosecutor.").  The Court noted that it has long held that a troubled history is relevant to assessing a defendant's moral culpability.  Id. at 2542, citing Penry v. Lynaugh, 492 U.S. 302, 319 (1989) (evidence about the defendant's background and

character is relevant because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background…may be less culpable than defendants who have no such excuse."); Eddings v. Oklahoma, 455 U.S. 104, 112 (1982) (noting that consideration of the offender's life history is a "part of the process of inflicting the penalty of death.")

As to the instances of prosecutorial misconduct outlined by Petitioner in his original Objections, they illustrate the prosecutors' attempts to argue and allude to facts that were inadmissible, not in evidence, or unproven.  The prosecutor sought to obtain a death sentence in this case based on Fears' other contacts with the justice system, his grades in school, and bad behavior.

As noted in Ground Three, the death penalty differs in kind from all other forms of punishment.  See Woodson v. North Carolina, 428 U.S. 280, 304-05 (1976).  It must, therefore, be imposed in a manner that is as reliable as is humanly possible.  See id.  An arbitrarily imposed death sentence is not reliable.  See, generally Furman v. Georgia, 408 U.S. 238 (1972).  The means by which arbitrariness in capital sentencing proceedings is eliminated is through the enactment and strict enforcement of a  valid capital sentencing scheme, devised by the legislature.  See, generally, Gregg v. Georgia, 428 U.S. 153 (1976); Jurek v. Texas, 428 U.S. 262 (1976).

O.R.C. § 2929.04(A)(1)-(9) sets out the aggravating circumstances that may be weighed against a defendant's mitigating factors at the penalty phase of a capital trial.  These are the only selection factors that may be placed on "death's side of the scale."  See Stringer v. Black, 503 U.S. 222, 232 (1992).  See also State v. Wogenstahl, 75 Ohio St. 3d 344, 355, 662 N.E.2d 311, 321 (1996).  Moreover, constitutional error results when invalid aggravators are placed into the

capital sentencing calculus.  See Stringer, 503 U.S. at 235-36; Sochor v. Florida, 504 U.S. 527, 539 (1992); State v. Davis, 38 Ohio St. 3d 361, 369-70, 528 N.E.2d 925, 933-34 (1988).  Concomitantly, O.R.C. § 2929.04(B) sets out the mitigating factors to be considered in sentencing.  A jury may not be precluded from considering relevant mitigating factors.  Lockett v. Ohio, 438 U.S. 584 (1978).

The prosecutor's misconduct was a deliberate and repeated attempt to lead the jurors into improper considerations, thereby creating the danger that Fears was sentenced to death based on arbitrary and non-statutory considerations.

Counsel's failure to object rendered deficient performance to Fears' prejudice.  "One of defense counsel's most important roles is to ensure that the prosecutor does not transgress [the bounds of proper conduct]."  Washington, 228 F.3d at 709.  Failure to object, unless it is plain error, may result in an error being waived for appellate review.  See Lucas v. O'Dea, 179 F.3d 412, 418-19 (6th Cir. 1998); Gravley v. Mills, 87 F.3d 779, 785 (6th Cir. 1996); Freeman v. Lane, 962 F.2d 1252, 1256-59 (7th Cir. 1992).  Counsels' failure to object ensured that the impact of the prosecutor's prejudicial acts were felt full-force. Trial counsel's errors and omissions, and their cumulative effect, denied Fears his right to counsel.  Strickland, 466 U.S. 668; Harris, 64 F.3d 1432.

The Ohio Supreme Court summarily rejected these claims without any citation to, or discussion of, federal law.  Fears, 715 N.E.2d 136, 153.  Thus, there was no adjudication on the merits of this claim by the Ohio Supreme Court that requires any deference by this Court on habeas review.  See Doan v. Brigano, 237 F.3d 722, 730-31 (6th Cir. 2001); Magana v. Hofbauer, 263 F.3d 542, 551 (6th Cir. 2001)(de novo review of habeas claim alleging ineffective assistance of counsel). See also 28 U.S.C. § 2254(d)(1). Resultantly, under Harris v. Stovall, 212

F.3d 940 (6th Cir. 2000), this Court must conduct "an independent review of the record and applicable law to determine whether the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented." Id. at 943 (citation omitted).

As to the failure to object to the improper jury instructions, it was improper for the jury to be instructed that its verdict must be unanimous when *rejecting a death sentence*. State v. Springer, 586 N.E. 2d 96 (ohio 1992); State v. Brooks, 661 N.E.2d 1030 (Ohio 1996). One juror can prevent the imposition of the death penalty in Ohio by finding that the aggravating circumstances do not outweigh the mitigating factors beyond a reasonable doubt.

Juries are capable of understanding capital sentencing issues, however, "they must first be properly instructed." Mills v. Maryland, 486 U.S. 367, 377 n.10 (1988). In capital sentencing hearings it is the ultimate responsibility of the trial court to properly instruct the jury as to its role at the penalty phase. Kelly v. South Carolina, 534 U.S. 246, 256 (2002). The trial court in Fears' case failed to fulfill its responsibility to accurately instruct the jurors, and thereby created an unacceptable risk that the death sentence was improperly and arbitrarily imposed. Counsel's failure to object to the improper instruction constituted ineffective assistance.

Fears also incorporates by reference as if fully set out herein his original objections to the Magistrate's Report and Recommendations on the Fifth Ground for Relief. (Doc. 117 and 123).

**Objections to Supplemental Report and Recommendations on Sixth Ground for Relief:**

Petitioner Fears was deprived of the effective assistance of counsel on his direct appeal as of right in violation of the Sixth Amendment and due process clause of the Fourteenth Amendment.

In the Supplemental Report and Recommendations, the Magistrate addresses the failure of counsel on appeal to assert ineffective assistance of trial counsel in not raising a voluntary

intoxication defense and the failure of counsel on appeal to assert ineffective assistance of trial counsel in not objecting to references to the wrong specifications in the jury charge. As to the failure to object to the incorrect specifications, the Magistrate concluded that no additional analysis is needed. (Supp. R&R, p. 23). Fears therefore incorporates by reference as if fully set out herein his original objections to the Magistrate's Report and Recommendations on this Ground for Relief. (Doc. 117 and 123).

As to the the failure to present an intoxication defense, the Magistrate cites to the state Court of Appeals decision in post-conviction. The Magistrate also believes that a showing of total incapacitation by intoxication must be made. (Supp. R&R, p. 23). This would put an extreme and unwarranted burden on the defense. Obviously an individual may be found to be lacking intent due to intoxication yet still able to commit the offense, which would not be possible in a state of total incapacitation.

Although the state Court of Appeals stated that intoxication does not necessarily negate purpose, the court failed to consider the evidence in Dr. Smith's affidavit, that Fears was under the influence of alcohol and marijuana, that his cognitive functioning was impaired, and that alcohol and marijuana cause 'impulsivity, distorted perceptions, impaired judgment, decreased problem solving skills, increased reaction times, incoordination [sic], impaired memory, and significant mood swings.'" Ohio v. Fears, 1999 Ohio App. LEXIS 5365 * 18 (Hamilton Cty. Nov. 12, 1999). This evidence would demonstrate to the fact-finder at trial that Fears lacked the intent required for aggravated murder. Appellate counsel failed to raise this issue to the Ohio Supreme Court, yet raised issues that were summarily rejected by the court because they were not properly preserved or where the issue had been addressed by the court in other cases and rejected. Fears, 715 N.E. 2d at 143.

Fears also incorporates by reference as if fully set out herein his original objections to the

Magistrate's Report and Recommendations on the Sixth Ground for Relief. (Doc. 117 and 123).

**<u>Objections to Supplemental Report and Recommendations on Ninth Ground for Relief</u>:**

> A jury instruction on the defense of accident that was neither asserted by the defense nor supported in the record and which had the effect of shifting the burden of proof on the essential element of purpose to Petitioner, violated his fundamental rights to due process and a fair trial as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

The Magistrate states that the Objections do not demonstrate that the Ohio Supreme

Court decision was an objectively unreasonable application of clearly established federal law.

(Supp. R&R, p. 24).

The Ohio Supreme Court, in its discussion of this claim, noted that it disagreed with

Fears' argument that this instruction confused the jury and made it appear that the defense was

asserting something more than a lack of purpose. The court said that the instruction on accident,

in effect, underscores the position taken by defense counsel that appellant did not intentionally

cause the death of the victim, and that the trial court made it clear that "purpose to cause the

death" is an essential element of aggravated murder and that the state had to prove all the

elements of the offense beyond a reasonable doubt, including specific intent. <u>Fears</u>, 715 N.E. 2d

at 148-9.

The Ohio Supreme Court analysis ignores relevant federal case law, by concluding that

the erroneous jury instruction somehow aided the defense position. In actuality, the instruction

shifted the burden of proof to the defendant to show that he lacked purpose, thereby relieving the

State of its burden of proving intent to kill beyond a reasonable doubt. *Lack of intent* is clearly

different than a *defense of accident*. Intent is an element that must be proved by the State. The

jury would very likely be confused and believe that the defendant must prove lack of intent by

26

proving that the homicide was accidental as defined by the court. The State's request for this instruction is one more example of the efforts by the prosecutors to improperly manipulate and misrepresent the evidence to the jury. TR 2264. Indeed, the prosecutor argued in closing that a "purposeful act is when one intends it and *not accident*." TR 2293. (emphasis added).

The Ohio Supreme Court decision on this claim was an unreasonable application of clearly established federal law because it was contrary to the principles of due process which guarantee that the *State must prove* each essential element of the crime charged beyond a reasonable doubt. In re Winship, 397 U.S. 358, 364 (1970). The trial court's instructions created a "reasonable likelihood" that the State's burden of proof was shifted to Fears. See, Estelle v. McGuire, 502 U.S. 62, 72 (1991); Francis v. Franklin, 471 U.S. 307, 317. Although the trial court's instruction contained an instruction on purpose, as noted by the Ohio Supreme Court, this Court must still reverse Fears' conviction and remand his case for a new trial. When the jury is given contradictory instructions on crucial points of law reversal is required. Stromberg v. California, 283 U.S. 359, 367-68 (1931). Reversal is required because this Court cannot determine from a cold record if the jury followed the correct or incorrect instructions. See id.

There is a reasonable likelihood that the jury applied the instructions in such a way as to convict even if the State had not proved all of the elements of the offense of aggravated murder. Boyde v. California, 494 U.S. 370, 380 (1990). This Court must reverse.

Fears also incorporates by reference as if fully set out herein his original objections to the Magistrate's Report and Recommendations on the Ninth Ground for Relief. (Doc. 117 and 123).

Respectfully submitted,

/s/ Lawrence J. Greger_____
LAWRENCE J. GREGER - 0002592
Attorney at Law
Suite 1100 Liberty Tower
120 W. Second Street
Dayton, OH 45402

and

DAVID BODIKER
Ohio Public Defender

/s/ Linda E. Prucha_____
LINDA E. PRUCHA - 0040689
Assistant State Public Defender
Office of the Ohio Public Defender
8 East Long Street
Columbus, Ohio 43215
(614) 466-5394

COUNSEL FOR PETITIONER

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of December, 2006, a true copy of the foregoing

**Angelo Fears' Objections to Magistrate Judge's Supplemental Report and Recommendations** was electronically filed. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Linda E. Prucha_____
COUNSEL FOR ANGELO FEARS

28